PER CURIAM.
At issue in this insurance coverage dispute is whether defendant Pro-Seal Service Group, Inc.’s, act of shipping a product in a competitor’s packaging with Pro-Seal’s labeling affixed to it constitutes an “advertisement” for purposes of an insurance policy. The Court of Appeals determined that plaintiff (Citizens Insurance Company) was required to defend defendant under the terms of a commercial general liability policy (CGL policy) because the underlying complaint alleged a violation of trade dress[1] and such a violation inherently involves advertising activity. Because we conclude that the act of shipping a product in a competitor’s packaging with one’s own name affixed to it is insufficient to satisfy the CGL policy’s definition of an “advertisement,” we reverse the judgment of the Court of Appeals that held to the contrary and remand *78 this case to the trial court for further proceedings not inconsistent with this opinion.
I. FACTS AND PROCEDURAL HISTORY
Defendant Pro-Seal Service Group, Inc., is a Michigan corporation that sells and repairs mechanical seals used in oil production facilities in Alaska. Pro-Seal has a CGL policy and an umbrella insurance policy with plaintiff Citizens Insurance. Pro-Seal’s major competitor for mechanical seal sales in the Alaskan market is defendant Flowserve Corporation, a New York corporation that manufactures, sells, and refurbishes mechanical seals. The dispute between Flowserve and Pro-Seal began in June 2003, when a Flowserve employee discovered that two Flowserve mechanical seals that had been repaired by Pro-Seal were being shipped to a customer in the original Flowserve container, with the name “Pro-Seal” affixed to the outside of the container. Flowserve brought a suit against Pro-Seal in the United States District Court for the District of Alaska, claiming that Pro-Seal created confusion in the marketplace by imitating or infringing trademarks or product marks, and by using trade secrets, blueprints, engineering drawings, packaging materials, and sales practices that misrepresented Pro-Seal seals as being Flowserve seals.[2] Pro-Seal requested that plaintiff defend it in the Flowserve action pursuant to both insurance policies. Plaintiff concluded that the nature of the allegations in the Flowserve complaint were beyond the scope of either policy and, therefore, refused to defend Pro-Seal. Plaintiff filed the instant action seeking a declaration that plaintiff was not required to defend Pro-Seal under either policy.
*79 The trial court granted plaintiffs motion for summary disposition, introducing its analysis by noting that if a contract is plain and unambiguous, it must be enforced according to its terms. Burkhardt v Bailey, 260 Mich App 636, 656; 680 NW2d 453 (2004). According to the terms of the instant insurance contract, coverage is excluded for advertising injuries that are “knowingly made.” The trial court concluded that coverage did not exist for the conduct asserted in the Flowserve lawsuit because it “alleges an intentional course of conduct involving fraud, deceit, and counterfeit parts being sold as genuine.”
On appeal, the Court of Appeals vacated the judgment of the trial court in a published opinion, holding that plaintiff was required to represent defendant Pro-Seal because Flowserve’s allegations fell within the definition of an “advertising injury” under the CGL policy. 268 Mich App 542; 710 NW2d 547 (2005). The Court of Appeals undertook its analysis by noting that the protection of trade dress is intended to “ ‘ “secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers.” ’ ” Id. at 550-551, quoting Two Pesos, supra at 774, quoting Park ’N Fly, Inc v Dollar Park & Fly, Inc, 469 US 189, 198; 105 S Ct 658; 83 L Ed 2d 582 (1985). Because the underlying complaint alleged that Pro-Seal’s conduct confused and misled customers into believing that Pro-Seal seals were Flowserve seals, the ability of customers to “distinguish between competing producers” was implicated. On that basis, the Court of Appeals held that Flowserve’s complaint alleged a trade dress infringement. The Court of Appeals also held that the alleged trade dress infringement occurred in an “advertisement” because “ ‘allegations of trademark and trade dress infringement inherently involve advertising activity. In other words, there *80 can be no trademark/trade dress infringement without advertising having occurred.’ ” Id. at 551-552, quoting Poof Toy Products, Inc v United States Fidelity & Guaranty Co, 891 F Supp 1228, 1235-1236 (ED Mich, 1995).
Leave to appeal was sought in this Court and, after directing the parties to address certain issues,[3] we heard oral argument on whether to grant the plaintiffs application for leave to appeal or take other peremptory action permitted by MCR 7.302(G)(1). 474 Mich 1112 (2006).
II. STANDARD OF REVIEW
We review de novo the grant or denial of a motion for summary disposition. Kreiner v Fischer, 471 Mich 109, 129; 683 NW2d 611 (2004). This case requires that we consider whether defendant’s alleged conduct took place in an “advertisement” as that term in defined in the insurance policy. The construction and interpretation of the language in an insurance contract is a question of law that this Court reviews de novo. Klapp v United Ins Group Agency, Inc, 468 Mich 459, 463; 663 NW2d 447 (2003).
III. ANALYSIS
The terms of the CGL policy provide that plaintiff “will pay those sums that the insured becomes legally obligated to pay as damages because of ‘personal and *81 advertising injury’ to which this insurance applies.” The CGL policy defines a “personal and advertising injury” as follows:
14. “Personal and advertising injury” means injury, including consequential “bodily injury”, arising out of one or more of the following offenses:
(f) The use of another’s advertising idea in your “advertisement”; or
(g) Infringing upon another’s copyright, trade dress or slogan in your “advertisement.”
The umbrella policy defines an “advertising injury” as follows:
A. Advertising Injury means injury caused by one or more of the following offenses committed during the policy period in the course of advertising your goods, products or services:
1. Oral or written publication of material that slanders or libels a person or organization or disparages a person’s or organization’s goods, products or services.
2. Oral or written publication of material that violates a person’s right or [sic] privacy.
3. Misappropriation of advertising ideas or style of doing business; or
4. Infringement of copyright, title or slogan.
The term “advertisement” is defined in the CGL policy as[4]
*82 a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.
“[I]n reviewing an insurance policy dispute we must look to the language of the insurance policy and interpret the terms therein in accordance with Michigan’s well-established principles of contract construction.” Henderson v State Farm Fire & Cas Co, 460 Mich 348, 353-354; 596 NW2d 190 (1999). In Henderson, this Court described those principles as follows:
First, an insurance contract must be enforced in accordance with its terms. A court must not hold an insurance company liable for a risk that it did not assume. Second, a court should not create ambiguity in an insurance policy where the terms of the contract are clear and precise. Thus, the terms of a contract must be enforced as written where there is no ambiguity.
While we construe the contract in favor of the insured if an ambiguity is found, this does not mean that the plain meaning of a word or phrase should be perverted, or that a word or phrase, the meaning of which is specific and well recognized, should be given some alien construction merely for the purpose of benefiting an insured. The fact that a *83 policy does not define a relevant term does not render the policy ambiguous. Bather, reviewing courts must interpret the terms of the contract in accordance with their commonly used meanings. Indeed, we do not ascribe ambiguity to words simply because dictionary publishers are obliged to define words differently to avoid possible plagiarism. [Id. at 354 (citations omitted).]
The Court of Appeals erred in this ease by failing to enforce the terms of the CGL policy as written.[5] While the Court of Appeals noted that the CGL policy defined the term “advertisement,” it ultimately rejected that definition in favor of a different definition articulated by the United States District Court in Poof Toy, supra at 1235-1236. In Poof Toy, the United States District Court held that
allegations of trademark and trade dress infringement inherently involve advertising activity. In other words, there can be no trademark/trade dress infringement without advertising having occurred. This conclusion results from a required element in every trademark/trade dress case, that the mark or dress is likely to cause confusion to the consumer or deceive the consumer as to the origin or manufacturer of the goods. See 15 U.S.C. § 1125(a). To have (or potentially cause) this effect, one must clearly advertise (announce to the intended customers) the mark or dress.
*84 However, the Court of Appeals failed to recognize that Poof Toys is readily distinguishable because the insurance contract at issue in that case did not define the term “advertisement.” Because the term was left undefined, the United States District Court consulted a dictionary to define the term and concluded on the basis of that definition that there was coverage under that policy. Because the term “advertisement” is defined in the instant CGL policy, and that definition is incorporated into the umbrella policy as well, the Court of Appeals’ reliance on Poof Toy was inappropriate inasmuch as it potentially subjects plaintiff to a risk that it did not assume. See, e.g., Westfield Companies v OKL Can Line, 155 Ohio App 3d 747, 755; 804 NE2d 45 (2003) (holding that Poof Toy did not apply to an insurance policy that specifically defined the term “advertisement”).
Thus, in order to determine whether plaintiff had a duty to defend in this case, we must ascertain whether defendant’s conduct falls within the scope of the term “advertisement” as written in the CGL policy. This Court interprets the words used in a contract “in accordance with their commonly used meanings.” Henderson, supra at 354. Further, when defining a phrase used in a contract, this Court “read[s] the phrase as a whole, giving the phrase its commonly used meaning.” Id. at 356. Under the instant policy, an “advertisement” takes place when there is: (1) a notice; (2) that is broadcast or published; (3) to the general public or specific market segments; (4) about [the company’s] goods, products, or services; and (5) for the purpose of attracting customers. “When considering a word or phrase that has not been given prior legal meaning, resort to a lay dictionary such as Webster’s is appropriate.” Greene v AP Products, Ltd, 475 Mich 502, 510; 717 NW2d 855 (2006). The dictionary defines *85 “notice,” in relevant part, as “a written or printed statement conveying... information ...Random House Webster’s College Dictionary (1997) at 895. The dictionary defines “broadcast,” in relevant part, as “to speak, perform, or present on a radio or television program” or “to spread widely; disseminate.” Id. at 166. “Publish” is defined, in relevant part, as “to announce formally or officially; proclaim; promulgate” or “to make publicly or generally known.” Id. at 1054. These definitions are consistent with the common understanding of the term “broadcast or publish” in the advertising realm as the public dissemination of information intended to inform potential customers of a company’s availability to do business. Thus, for example, a business such as Pro-Seal may utilize television, radio, newspapers, or billboards in order to inform potential customers about the goods and services they provide and to attract the patronage of such customers.
The Court of Appeals concluded that when defendant shipped one of its seals to a customer in a Flowserve container, that was an act that “constitute[ed] notice that is published to the specific market segment in which Pro-Seal and Flowserve compete about the seals for the purpose of attracting customers or supporters.” 268 Mich App at 552. Pro-Seal seizes on this argument, claiming that when it shipped the seal at issue to a distribution center to be forwarded to its customer, it could be observed by members of the general public visiting that distribution center. Therefore, according to defendant, the use of the Flowserve packaging constituted an “advertisement.”
However, both the Court of Appeals and defendant overlook that, under the terms of the CGL policy, defendant must publicly disseminate information about its goods and services for the purpose of attracting the *86 patronage of potential customers. Here, defendant sent a seal to a specific customer in a Flowserve container for the purpose of completing a single transaction. At best, Pro-Seal’s argument that it expected that other customers might view the package at the distribution center and, as a result, would be encouraged in doing business with defendant was an incidental and remote benefit that does not fundamentally alter the fact that this was a single transaction with a specific customer. We conclude that the purpose for placing a Pro-Seal label on the Flowserve container in this instance was to identify for that specific customer the source of the seal to allow that specific customer to contact defendant with any questions or complaints about that product.[6] Accord *87 ingly, we conclude that the harm alleged to have been caused by Pro-Seal’s act of shipping a seal in a Flowserve container did not “arise out of an advertisement” and, therefore, plaintiff was not obligated to tender a defense based on this allegation under the terms of the CGL policy.[7]
IV CONCLUSION
In order to constitute an advertisement under the CGL policy, defendant must publicly disseminate information about its goods and services for the purpose of attracting the patronage of potential customers. We conclude that when defendant shipped the seal in question to its customer in a Flowserve container affixed with a Pro-Seal label, there was no “advertising injury” under the CGL policy. Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the trial court for further proceedings not inconsistent with this opinion.[8]
*88 Taylor, C. J., and Corrigan, Young, and Markman, JJ., concurred.

 “The trade dress of a product is essentially its total image and overall appearance. It involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques.” Two Pesos, Inc v Taco Cabana, Inc, 505 US 763, 764 n1; 112 S Ct 2753; 120 L Ed 2d 615 (1992) (internal quotation marks and citations omitted).

 After a facilitation session, the Flowserve complaint was dismissed by stipulation. Defendant admitted two inadvertent trademark infringements and settled the case for $1,800.

 These issues were as follows: “(1) whether Flowserve’s complaint alleged an advertising injury within the meaning of the commercial general liability policy that Citizens Insurance Company issued to Pro-Seal, Inc., and (2) if so, whether Citizens was relieved of its duty to defend Pro-Seal by operation of the policy exclusion for actions taken with knowledge that an advertising injury would result.”

 The umbrella policy does not define the word “advertising.” However, the umbrella insurance policy does state:
The definitions, terms, conditions and exclusions of underlying insurance in effect at the inception of this policy apply to [the umbrella] coverage unless:
*82 A. They conflict with any of the provisions of this policy; or
B. There is a provision in this policy for which a similar provision is not contained in underlying insurance.
As it relates to an “advertising injury,” there is no conflict between the terms of the CGL policy and the umbrella policy. Furthermore, the “advertising injury” section of the umbrella policy is substantially similar to the “advertising injury” provisions in the CGL policy. The dictionary defines the term “advertising” as “paid announcements; advertisements.” Random, House Webster’s College Dictionary (1997) at 20. Therefore, pursuant to the terms of the umbrella policy, the definition of the term “advertisement” in the CGL policy applies to the umbrella policy as well.

 Justice Cavanagh argues that Flowserve alleged in its complaint that Pro-Seal used the Flowserve trademark to identify its products as Flowserve products and, on that basis, “it can be deduced that Pro-Seal was accused of taking actions that inherently involved notice broadcast or published to the general public or specific market segments about its goods, products, or services for the purpose of attracting customers or supporters.” Post at 90. However, the only portion of the Flowserve complaint relied upon by the Court of Appeals in this case is the allegation that Pro-Seal “shipped the counterfeit [seals] to the customer in a shipping crate prominently labeled with the Flowserve label.” Flowserve complaint at paragraph 22. We should not resolve this case on the basis of allegations that were not addressed by the Court of Appeals.

 We do not, as Justice Kelly asserts, hold that a company must engage in “wide-scale dissemination of information, such as by television or radio, for there to be an advertisement.” Post at 99. In fact, we agree with Justice Kelly that, in a limited market such as the Alaskan oil market, a notice broadcast to even a single customer might constitute “advertising,” as long as that notice was designed to “attract!] customers or supporters.” However, Justice Kelly overlooks the fact that the conduct complained of in this case, namely Pro-Seal’s act of shipping the seal in question to its customer in the original Flowserve container affixed with a Pro-Seal label, was not undertaken to “attract!] customers or supporters.” Bather, Pro-Seal shipped the seal in question in order to complete an already agreed-upon transaction. In other words, Pro-Seal had already “attracted” its customer by the time the seal in question was shipped in the container provided to Pro-Seal by that customer. While the complaint alleges that customer was confused about the origin of the seal at issue in this appeal, there is nothing in the complaint that could reasonably be construed as an allegation that the Pro-Seal labeling was designed to “attract” that customer to purchase another seal from Pro-Seal. Bather, looking at the context of the transaction, the Pro-Seal labeling simply served to identify the source of the repaired seal and to provide contact information if the customer had any questions or concerns. Likewise, contrary to Justice Kelly’s contention, nothing in the Flowserve complaint alleged that Pro-Seal utilized the container in question in order to “attract!] customers or supporters.” Bather, Flowserve alleged that the shipping container was used as part of an attempt by Pro-Seal to lead customers to believe that its seals were actually Flowserve seals. Accord *87 ingly, Pro-Seal’s act of shipping a seal to its customer in the original Flowserve container is simply not an “advertisement” as the term is defined by the policy.

 Because we conclude that no advertising occurred, we find it unnecessary to decide whether the underlying complaint alleged a “trade dress” or “trademark” violation, or whether Citizens Insurance was relieved of its duty to defend Pro-Seal by operation of the policy exclusion for actions taken with knowledge that an advertising injury would result.

 Justice Cavanagh argues that a remand to the trial court is inappropriate because when the trial court held that the policy did not apply to advertising injuries that are knowingly made, “it is clear that it found [an advertising injury] because it determined that the advertising injury was made knowingly.” Post at 90-91. We disagree. In granting summary disposition to plaintiff, the trial court concluded that the Flowserve complaint “alleges an intentional course of conduct involving fraud, deceit, and counterfeit parts being sold as genuine. Clearly, this conduct does not fall within the scope of the limited coverage for advertising injury provided by the policy.” Because the trial court relied wholly on the intentional nature of Pro-Seal’s conduct, it did not address whether the *88 Flowserve complaint actually set forth an “advertising injury” as defined by the policy. Because the trial court never addressed the issue left unresolved in this opinion, it should do so on remand.