*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

COURTNEY B. WIGGINTON,

       Plaintiff-Appellant,

v

AUTO-OWNERS INSURANCE COMPANY,

       Defendant-Appellee.

UNPUBLISHED
April 29, 2021

No. 351256
Oakland Circuit Court
LC No. 2019-171030-CZ

Before: TUKEL, P.J., and SERVITTO and RICK, JJ.

PER CURIAM.

In this insurance claim dispute, plaintiff appeals as of right the trial court's opinion and order granting summary disposition under MCR 2.116(C)(10) in favor of defendant. We reverse and remand for proceedings consistent with this opinion.

## I. BACKGROUND

This case arises out of water damage to the basement of plaintiff's home. Plaintiff purchased a home in approximately 2016. In 2017, plaintiff purchased a homeowner's insurance policy from defendant that was in effect from approximately March 2017 to March 2018. The insurance policy provided coverage for losses caused by water backup of sewers, drains, domestic appliance seepage or leakage, and high claims limits for losses related to fungi, bacteria, and mold. In January 2018, plaintiff filed a claim under the insurance policy for water and mold damage in her home's basement. Later that month, defendant sent plaintiff a letter denying the claim on the grounds that the basement was damaged by water coming through a foundation wall, and that the policy did not provide coverage for damage caused by "water below the surface from the ground." In October 2018, plaintiff filed a second claim for water and mold damage in her basement, which she attributed to a break in the drain line beneath the basement floor. Plaintiff asserted that the damage was related to the damage alleged in her January 2018 claim and the claim was reopened.

In November 2018, IAQ Management Services, Inc. submitted a report (IAQ report) to defendant regarding IAQ's "Level 1 (Post Water Event) Evaluation" of plaintiff's home, which was created at defendant's request. IAQ completed its evaluation on November 1, 2018, and concluded that the damage to plaintiff's basement was caused by "[b]ulk water migration from the

exterior (especially near walls with window wells), with limited horizontal migration along the north perimeter wall." IAQ reported the following "aggravating factors" that could have aggravated or precipitated water damage to the structure:

> (1) significantly degraded cinder block at the north exterior window well - indicative of chronic and/or historic water migration toward the north exterior foundation wall; (2) pooling water along the north wall foundation - indicative of potential hydrostatic infiltration; (3) active water infiltration (during the IAQ Management Services Inc. site inspection) at the north foundation wall of the basement family room/play room - indicative of foundation related water damage.

On November 29, 2018, Frank Strehl, an engineer employed by EFI Global of Michigan, LLC, authored and signed a report (EFI report) prepared for defendant regarding the damage in plaintiff's home. The scope of Strehl's assignment was to assess the cause and origin of the water intrusions in the basement of plaintiff's home. Strehl completed his evaluation in part by separately interviewing plaintiff and a plumber, and personally examining plaintiff's home on November 13, 2018. Strehl concluded that the water intrusions in the basement "were consistent with ground water migration through the basement wall and floor material as the result of damage and/or obstruction in the foundation drainage pipe exterior to the foundation along the north basement wall." He concluded that to determine the cause of the damage or obstruction to the drainage pipe would require excavation around the pipe. Strehl noted that "[f]oundation drainage systems for houses are designed to collect water from the surrounding soils at the perimeter of the basement" and that

> [i]f foundation drainage pipes become obstructed with sediment, or are damaged, they do not effectively drain normally occurring groundwater away from the basement of the residence. The water level will continue to rise and migrate into the basement through masonry wall blocks and/or cracks in the block material and/or the joint between the basement floor and the block wall.

In December 2018, defendant sent plaintiff a letter denying her claim on the grounds that the damage in her basement was "the result of ground water through a foundation drain line," which was not a covered cause of loss. Subsequently, Ronald Pinkos, the owner of Pisces Basement, authored a report (Pisces report) detailing his findings regarding excavation work he had performed at plaintiff's request. Pinkos concluded that the "causation of storm water backup was precipitated and caused by blockage from accidental infiltration of dirt/debris which prevented the storm water gathered in the north façade from egress."

Plaintiff filed a complaint based on defendant's denial of her insurance claim. Plaintiff asserted that her loss was covered, in part, by the "Water Backup of Sewers or Drains" policy and the "Domestic Appliance Seepage or Leakage" policy. Plaintiff also asserted a breach of contract claim under the Uniform Trade Practices Act, MCL 500.2001 *et seq.*, as a result of defendant's denial of her insurance claim.

Defendant moved for summary disposition under MCR 2.116(C)(8) and (C)(10). Defendant argued that the EFI, IAQ, and Pisces reports established that the damage in plaintiff's

home was caused by subsurface water and was expressly excluded from coverage under the insurance policies. Defendant further asserted that the damage was caused in part by "faulty inadequate, or defective construction," which also was not covered by the policy. Additionally, defendant argued that, even if some of the damage was covered by the policy, no coverage was available to plaintiff because "at least one excluded cause of loss contributed to the damage[.]" Finally, defendant argued that plaintiff's breach of contract claim had no merit because plaintiff was not entitled to coverage under the policy.

In response to defendant's motion for summary disposition, plaintiff argued that there was a genuine issue of material fact regarding the cause of the damage and asserted that coverage existed if the loss "came from within a plumbing system or from a sewer or drain[.]" Plaintiff filed an affidavit from Bryan Ritter, a general contractor. Ritter attested that he had "hands on working knowledge of the structure and plumbing of" plaintiff's home. According to Ritter, he reviewed and analyzed the water problems and concluded that the damage in plaintiff's basement was not caused by subsurface water. Rather, he opined that water entered the basement "from within a plumbing system" and that the system "failed due to an obstruction" in the drainage system. Ritter attested that the fact that plaintiff's home was located on a hill contributed to his opinion that the loss was "not due to any ground water below the surface of the ground." Further, Ritter opined that the loss was not caused by defective workmanship or construction.

The trial court granted summary disposition under MCR 2.116(C)(10) in favor of defendant. The court concluded that there was no question of fact that subsurface water was a cause of the damage. The court found that there was no evidence that water entered through sewers or drains and concluded that the loss was not covered under the "Water Backup of Sewers and Drains" policy. The court also found that all of the evidence clearly indicated that "the water intruded through the north cinderblock wall" of plaintiff's basement.

Regarding the Domestic Appliance provision, the court concluded that the loss would have been covered under the policy "if the foundation drain system [was] classified as a plumbing system." However, it noted that "plumbing system" was not defined in the policy. The court found that Ritter's affidavit was the only evidence that supported that the water seeped or leaked from within a plumbing system and that all of the other evidence, including the Pisces report, indicated that "blockage in the foundation drain line [sic] caused the subsurface water buildup which exerted hydrostatic pressure on the north wall and the subsequent seepage or leakage into the basement." The court held that Ritter's affidavit was insufficient to establish a genuine issue of material fact regarding the cause of the loss because Ritter merely made "conclusory statements" without presenting facts that supported them. Further, the court concluded that Ritter's affidavit did not rule out subsurface water as the cause or a contributing cause of the loss. Finally, the court rejected defendant's argument that the loss was caused by faulty construction because there was no evidence of faulty construction.

## II. ADMISSIBILITY OF THE REPORTS

As an initial matter, plaintiff argues that the trial court erred when it granted summary disposition because the trial court improperly relied on the Pisces and IAQ reports. Plaintiff argues that the reports were inadmissible hearsay. We disagree.

## A. STANDARD OF REVIEW

Questions of law "underlying evidentiary rulings, including the interpretation of statutes and court rules," are reviewed de novo. *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016). An issue is preserved if it is raised in the trial court and pursued on appeal. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994). "Where an issue is first presented in a motion for reconsideration, it is not properly preserved." *Vushaj v Farm Bureau Gen Ins Co*, 284 Mich App 513, 519; 773 NW2d 758 (2009). In her response to defendant's motion for summary disposition, plaintiff asserted that the EFI and IAQ reports were inadmissible hearsay. Therefore, plaintiff's argument as it relates to the IAQ report is preserved. Because plaintiff first argued that the Pisces report was inadmissible hearsay in her motion for reconsideration, however, the evidentiary challenge to the Pisces report is unpreserved. "Unpreserved issues . . . are reviewed for plain error affecting substantial rights." *Nat'l Wildlife Federation v Dep't of Environmental Quality (No 2)*, 306 Mich App 369, 373; 856 NW2d 394 (2014).

## B. ANALYSIS

The trial court did not err when it considered the Pisces and IAQ reports.

A party moving for summary disposition under MCR 2.116(C)(10) "has the initial burden to support its claim" with "affidavits, depositions, admissions, or other documentary evidence." *American Federation of State, Co, and Muni Employees v Detroit*, 267 Mich App 255, 261; 704 NW2d 712 (2005) (*AFSCME*). Generally, "documentary evidence that would be 'plausibly admissible' at trial if a proper foundation is laid is sufficient to survive a (C)(10) motion." *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 526; 773 NW2d 57 (2009). In other words, a party does "not have to lay the foundation for the admission" of evidence submitted in support of or opposition to a motion for summary disposition under MCR 2.116(C)(10) "as long as there [is] a plausible basis for the admission" of the evidence. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 373; 775 NW2d 618 (2009). Accordingly, evidence in support of summary disposition under MCR 2.116(C)(10) does not need to be in an admissible form, it needs to be only substantively admissible. See *id*.

In her complaint, plaintiff alleged that the insurance policy provided coverage for damage caused by seepage or leakage of water from within a plumbing system. In response, defendant argued that the policy excluded coverage for any damage caused by subsurface water. Defendant supported its motion for summary disposition in part by attaching copies of the IAQ, EFI, and Pisces reports. Both the IAQ report and the Pisces report contain the opinions of their respective authors, and those opinions were based on the authors' respective examinations of the basement in plaintiff's home and its related environs. MRE 701 permits lay witnesses to offer opinion testimony based on their perceptions. Additionally, MRE 702 permits a qualified witness to provide expert testimony. Had defendant been obliged to do so, it could have established the proper foundation to present the contents of those reports through the opinion testimony of their respective authors. Therefore, the contents of the IAQ report and the Pisces report were substantively admissible and the trial court did not err when it considered those documents.

## II.  MOTION FOR SUMMARY DISPOSITION

Plaintiff argues that the trial court erred by granting summary disposition because there was a genuine issue of material fact regarding the cause of the loss and whether or not the loss was covered by the insurance policy.  We agree.

### A.  STANDARD OF REVIEW

"This Court reviews de novo whether a trial court properly granted a motion for summary disposition." *Barnard Mfg Co, Inc*, 285 Mich App at 369.  The proper interpretation of a contract presents a question of law subject to review de novo.  *Titan Ins Co v Hyten*, 491 Mich 547, 553; 817 NW2d 562 (2012).  "The insurance company has the burden to prove that one of the policy's exclusions applies." *Auto-Owners Ins Co v Seils*, 310 Mich App 132, 146; 871 NW2d 530 (2015).

### B.  ANALYSIS

Summary disposition under MCR 2.116(C)(10) is proper if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  MCR 2.116(C)(10). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Bennett v Russell*, 322 Mich App 638, 642; 913 NW2d 364 (2018) (quotation marks and citations omitted).

> In presenting a motion for summary disposition [under MCR 2.116(C)(10)], the moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence.  The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists.  Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists.  If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. [*Quinto v Cross and Peters Co*, 451 Mich 358, 362-363; 547 NW2d 314 (1996) (cleaned up).]

### 1.  INSURANCE POLICY PROVISIONS

Plaintiff asserts that defendant failed to establish that her loss was excluded by the insurance policy.  We agree.

"An insurance policy is much the same as any other contract.  It is an agreement between the parties in which a court will determine what the agreement was and effectuate the intent of the parties." *Dancey v Travelers Prop Cas Co of America*, 288 Mich App 1, 8; 792 NW2d 372 (2010) (cleaned up).  "In reviewing an insurance policy dispute we must look to the language of the insurance policy and interpret the terms therein in accordance with Michigan's well-established principles of contract construction." *Citizens Ins Co v Pro-Seal Serv Group, Inc*, 477 Mich 75, 82; 730 NW2d 682 (2007) (cleaned up).

"[A]n insurance contract should be read as a whole and meaning should be given to all terms. The policy application, declarations page of policy, and the policy itself construed together constitute the contract." *Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 715; 706 NW2d 426 (2005) (cleaned up). Further, "[a]n insurance contract must be construed so as to give effect to every word, clause, and phrase, and a construction should be avoided that would render any part of the contract surplusage or nugatory." *Id*. In interpreting an insurance contract, our Supreme Court has explained:

First, an insurance contract must be enforced in accordance with its terms. A court must not hold an insurance company liable for a risk that it did not assume. Second, a court should not create ambiguity in an insurance policy where the terms of the contract are clear and precise. Thus, the terms of a contract must be enforced as written where there is no ambiguity.

While we construe the contract in favor of the insured if an ambiguity is found, this does not mean that the plain meaning of a word or phrase should be perverted, or that a word or phrase, the meaning of which is specific and well recognized, should be given some alien construction merely for the purpose of benefiting an insured. [*Citizens Ins Co*, 477 Mich at 82 (cleaned up).]

The insurance policy in this case has several provisions at issue. Section 3(a) of the insurance policy excluded water damage and provided, in relevant part, as follows:

**We** do not cover loss to covered property caused directly or indirectly by any of the following, whether or not any other cause or event contributes concurrently or in any sequence to the loss:

* * *

**(3)** Water damage, meaning:

* * *

**(b)** water or sewage from outside the plumbing system that enters through sewers or drains;

**(c)** water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

**(d)** water below the surface of the ground. This includes water which exerts pressure on or flows, seeps or leaks through any part of a building, sidewalk, driveway, swimming pool or other structure.

The insurance policy also contained provisions that provided "additional coverage," which plaintiff purchased at an additional cost. The first one at issue, the "Water Backup provision," provided:

**Water Backup of Sewers or Drains**

**We** cover risk of accidental direct physical loss to covered property described under Coverage A - Dwelling, Coverage B - Other Structures and Coverage C - Personal Property caused by:

**a.** water from outside the plumbing system that enters through sewers or drains; and

**b.** water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area.

The second, "Domestic Appliance provision" added coverage for "Domestic Appliance Seepage or Leakage," and provided, in relevant part:

**We** will pay up to the limit of insurance shown in the Declarations under "Domestic Appliance Seepage or Leakage" for loss or damage to covered property caused directly or indirectly by constant or repeated seepage or leakage of water or steam from within a:

**(1)** plumbing system;

\* \* \*

which occurs over a period of weeks, months or years. However, **we** do not cover loss to the system or appliance from which the water or steam seeps or leaks. This is not an additional amount of insurance.

"Plumbing system" was not defined in the insurance policy.

Plaintiff asserts that the subsurface water exclusion, Section 3(a)(3)(d), in the insurance policy is ambiguous and must be interpreted to mean water that is below the ground surface of the basement. The relevant portion of the insurance policy is the phrase "water below the surface of the ground." The trial court rejected plaintiff's interpretation, ruling that the phrase was unambiguous, and that plaintiff's interpretation invited bizarre results. Plaintiff has failed to expose any ambiguity in the phrase. We conclude that the phrase is unambiguous and that the trial court did not err by also concluding so.

Plaintiff also contends that defendant may not deny her claim by relying on the exclusions covering mold, or defective or faulty construction. The trial court agreed that defendant did not provide any evidence that the damage in the basement was caused by faulty construction. Further, the court did not reach the issue of mold coverage because it determined that water from below the surface of the ground was at least a cause of the damage in the basement. As explained below, because we conclude that there exists a genuine issue of material fact regarding the causation of the water infiltration and defendant was not entitled to judgment as a matter of law, we need not determine whether or not the mold exclusion provision applies.

## 2. CAUSATION OF THE WATER INFILTRATION

In its motion for summary disposition, defendant argued that the EFI, IAQ, and Pisces reports established that the damage to plaintiff's basement was caused by subsurface water, which was expressly excluded from coverage under the policy.

The IAQ report indicated that the damage was caused by "[b]ulk water migration from the exterior[.]" The EFI report indicated that the water intrusions in the basement "were consistent with ground water migration through the basement wall and floor material as the result of damage and/or obstruction in the foundation drainage pipe exterior to the foundation along the north basement wall," and that determining the cause of the damage or obstruction to the drainage pipe would require excavation around the pipe. It further noted that "[f]oundation drainage systems for houses are designed to collect water from the surrounding soils at the perimeter of the basement" and that

> [i]f foundation drainage pipes become obstructed with sediment, or are damaged, they do not effectively drain normally occurring groundwater away from the basement of the residence. The water level will continue to rise and migrate into the basement through masonry wall blocks and/or cracks in the block material and/or the joint between the basement floor and the block wall.

The Pisces report indicated that the "causation of storm water backup was precipitated and caused by blockage from accidental infiltration of dirt/debris which prevented the storm water gathered in the north façade from egress."

In granting summary disposition, the trial court concluded that there was no question of fact that subsurface water was a cause of the damage to plaintiff's home and that plaintiff's loss was not covered under the Water Backup provision or the Domestic Appliance provision. The court found "no evidence" that water entered through sewers or drains and that all of the evidence clearly indicated that "the water intruded through the north cinderblock wall" of plaintiff's basement. However, plaintiff submitted Ritter's affidavit in which Ritter opined that water entered the basement "from within a plumbing system" and that the system "failed due to an obstruction" in the drainage system.

The court found that Ritter's affidavit was the only evidence that supported plaintiff's assertion that the water seeped or leaked from within a plumbing system and that all of the other evidence, including the Pisces report, indicated that "blockage in the foundation drain line [sic] caused the subsurface water buildup which exerted hydrostatic pressure on the north wall and the subsequent seepage or leakage into the basement." The court determined that Ritter's affidavit was insufficient to establish a genuine issue of material fact regarding the cause of the loss because Ritter merely made "conclusory statements" without presenting facts that supported them. Further, the court found that Ritter's affidavit did not rule out subsurface water as the cause or a contributing cause of the loss.

Based on EFI, IAQ, and Pisces reports, we conclude that there is a genuine issue of material fact regarding how the water seeped or leaked into plaintiff's basement and caused the damage. Although the IAQ report suggested that the water entered into the basement through the exterior,

the EFI report and Pisces report indicated that the water intrusions were related to damage or obstruction of a drainage pipe. Strehl explained that determining the cause of the obstruction in the foundation drainage line would *require* excavation, which was beyond the scope of his assignment. On the basis of this evidence, and giving the benefit of reasonable inferences to plaintiff, the cause of the water infiltration that resulted in damage to plaintiff's home is "an issue upon which reasonable minds might differ." *Bennett*, 322 Mich App at 642. Further, there is a genuine issue of material fact regarding whether or not the drainage system was part of a "plumbing system," as it relates to the Domestic Appliance provision, a "system designed to remove subsurface water which is drained from the foundation area" as it relates to the Water Backup provision, or alternatively, whether the water infiltration was solely caused by "water below the surface of the ground," excluding coverage under Section 3(a)(3)(d). "The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(0(10)." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). Therefore, because a genuine issue of material fact exists, the trial court erred by granting summary disposition under MCR 2.116(C)(10) in favor of defendant.

Plaintiff also argues that the concurrent cause exclusion provision of the insurance policy, Section 3(a)(3)(d), does not apply to her claim under the policy. The trial court concluded that "if a cause of the seepage or leakage is excluded [under the insurance policy], then any ensuing damage is not covered regardless of any covered causes that may have contributed to the damage in any sequence." The court relied in part on *Sunshine Motors, Inc v New Hampshire Ins Co*, 209 Mich App 58, 59; 530 NW2d 120 (1995), and determined that the general exclusion provision in the instant case was "virtually identical" to that of the provision in *Sunshine Motors, Inc*. In *Sunshine Motors, Inc*, this Court held that the insurance policy at issue "clearly and unambiguously excluded coverage for damage caused directly or indirectly by, among other things, flooding, surface water, water backing up from a sewer or drain, contributing weather conditions, or faulty or inadequate maintenance of property on or off the insured's premises." *Id*. The insurance policy provisions in the instant case make it entirely distinguishable from *Sunshine Motors, Inc*. As indicated, "[a]n insurance contract must be construed so as to give effect to every word, clause, and phrase, and a construction should be avoided that would render any part of the contract surplusage or nugatory." *Royal Prop Group, LLC*, 267 Mich App at 715. Although Section 3(a)(3)(d) of the insurance policy in the instant case provided that defendant would not "cover loss to covered property caused directly or indirectly" by an excluded cause either concurrently or in any sequence, the Water Backup and Domestic Appliance provisions explicitly provide additional coverage for losses contained therein. Therefore, in considering whether or not defendant established that an exclusion applied, the trial court was required to consider the Water Backup and Domestic Appliance provisions in conjunction with Section 3(a).

Because there is a genuine issue of material fact regarding the cause of the water intrusion, defendant failed to establish that a policy exclusion applied and, therefore, was not entitled to judgment as a matter of law. *Auto-Owners Ins Co*, 310 Mich App at 146.

## 3. AFFIDAVITS

Plaintiff argues that the Ritter affidavit supported and created a genuine issue of material fact. Defendant argues that the trial court properly disregarded Ritter's affidavit. Plaintiff further argues that the trial court erred by considering Strehl's affidavit.

"Affidavits, depositions, admissions, and documentary evidence offered in support of or in opposition to a motion based on [MCR 2.116(C)(10)] shall only be considered to the extent that the content or substance would be admissible as evidence to establish or deny the grounds stated in the motion." MCR 2.116(G)(6). "The affidavits must be made on the basis of personal knowledge and must set forth with particularity such facts as would be admissible as evidence to establish or deny the grounds stated in the motion." *SSC Assoc Ltd Partnership v Gen Retirement Sys of Detroit*, 192 Mich App 360, 364; 480 NW2d 275, 277 (1991). "Circumstantial evidence can be sufficient to establish a genuine issue of material fact, but mere conjecture or speculation is insufficient." *McNeill-Marks v MidMichigan Med Ctr-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016). "[M]ere conclusory allegations within an affidavit that are devoid of detail are insufficient to create a question of fact." *Hamade v Sunoco, Inc (R & M)*, 271 Mich App 145, 163; 721 NW2d 233 (2006). Further, in a motion for summary disposition, the trial court must consider affidavits and other evidence "in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).

Notably, the trial court determined that plaintiff's loss would have been covered under the policy "if the foundation drain system [was] classified as a plumbing system." However, on the basis of its finding that Ritter's affidavit was conclusory, the court rejected plaintiff's argument that the loss was covered and concluded that the Ritter affidavit did not rebut the evidence that the loss was caused by subsurface water. On appeal, defendant argues that Ritter's affidavit "only [created an] ambiguity as to whether he was being proffered as an expert or as a lay witness."[1]

"[T]here is no requirement that an expert's qualifications and methods be incorporated into an affidavit submitted in support of, or opposition to, a motion for summary disposition." *Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010). "Rather, *the content* of the affidavits must be admissible in *substance*, not form. And the requirements of MRE 702 are foundational to the admission of the expert's testimony at trial." *Id.* (Cleaned up.) MCR 2.119(B)(1) provides:

If an affidavit is filed in support of or in opposition to a motion, it must:

(a) be made on personal knowledge;

---

[1] We note that although defendant challenged Ritter's qualifications as an expert under MRE 702 in response to plaintiff's brief in opposition of summary disposition, the trial court did not rule on this issue because it concluded that "challenging a proposed expert's qualifications [was] not properly before a court in a reply brief on summary disposition" under MCR 2.116(G)(1)(a)(iii). As indicated below, whether or not an expert is qualified to provide expert testimony under MRE 702 is a matter for trial.

(b) state with particularity facts admissible as evidence establishing or denying the grounds stated in the motion; and

(c) show affirmatively that the affiant, if sworn as a witness, can testify competently to the facts stated in the affidavit.

"As MCR 2.119(B)(1)(c) provides, the affidavit need only show that the affiant, *if sworn as a witness*, can testify competently to the facts stated in the affidavit." *Dextrom*, 287 Mich App at 428. Whether Ritter could meet the MRE 702 requirements is a matter reserved for trial. See *Id*. As indicated, a party does "not have to lay the foundation for the admission" for evidence submitted in support of or in opposition to a motion for summary disposition under MCR 2.116(C)(10) "as long as there [is] a plausible basis for the admission" of the evidence. *Barnard Mfg Co, Inc*, 285 Mich App at 373.

In his affidavit, Ritter attested that he was a licensed general contractor who was hired by plaintiff in April 2019. He asserted that he had "hands on working knowledge of the structure and plumbing" of plaintiff's home and conducted a "complete review and analysis of the water problems in the lower level" of plaintiff's home. Ritter reviewed defendant's denial of plaintiff's claim and attested "that [i]n [his] professional opinion that while there was an obstruction in the drainage system, the water came from within a plumbing system and not from repeated seepage of water from below the surface of the ground." Further, he opined that "[f]or the loss to be caused by hydrostatic water pressure causing water from below the surface of the ground to seep through the basement walls, it would not be limited to a single wall such as the north wall, but to all walls surrounding the house. Therefore, the loss was not caused by water beneath the surface of the ground seeping through basement walls but from the failure of a plumbing system." Ritter attested that the fact that plaintiff's home was located on a hill contributed to his opinion that the loss was "not due to any ground water below the surface of the ground." Further, Ritter opined that the loss was not caused by defective workmanship or construction.

Viewing Ritter's affidavit in the light most favorable to plaintiff, we conclude that Ritter's affidavit comported with the requirements of MCR 2.119(B)(1). Ritter attested that he had personal knowledge of plaintiff's basement and the affidavit set forth facts that created a question of material fact regarding the cause of the water infiltration that was made on the basis of his personal knowledge. Therefore, the trial court erred when it disregarded Ritter's affidavit and concluded that it was merely conclusory.

Plaintiff also asserts that Strehl's opinion regarding the cause of the damage in the basement was flawed because Strehl offered only conclusory statements in his affidavit. In his affidavit, Strehl explained his findings and conclusions were based on his personal knowledge and also attached a copy of the EFI report that explained his findings in greater detail. For the same reasons applicable to Ritter's affidavit, we conclude that the trial court did not err by considering Strehl's affidavit.

Considering Ritter's affidavit alongside the reports submitted by defendant, we conclude that there was a genuine issue of material fact regarding the cause of the water infiltration. Accordingly, the trial court erred by granting summary disposition under MCR 2.116(C)(10) in favor of defendant.

### 4. UTPA

Plaintiff also asserts that she is entitled to penalty interest under the Uniform Trade Practices Act, MCL 500.2001 *et seq.*, on the grounds that defendant failed to pay her claim under the insurance policy in a timely fashion. See MCL 500.2006(4). Although we conclude that the trial court erred by granting summary disposition as to all of plaintiff's claims in favor of defendant, plaintiff has not established that she is entitled to coverage and we need not reach this issue. However, we note that this claim survives summary disposition for the reasons explained earlier.

In summary, we hold that the trial court erred by granting summary disposition in favor of defendant because there is a genuine issue of material fact as it relates to the cause of the loss and whether plaintiff was entitled to coverage under the insurance policy.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff, being the prevailing party, may tax costs under MCR 7.219.

/s/ Jonathan Tukel
/s/ Deborah A. Servitto
/s/ /Michelle M. Rick