*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MEMBERSELECT INSURANCE COMPANY,

Plaintiff-Appellant,

v

DOMINIC KEITH FRAZER,

Defendant-Appellee.

UNPUBLISHED
December 12, 2025
3:00 PM

No. 371573
Macomb Circuit Court
LC No. 2023-001008-NZ

Before: TREBILCOCK, P.J., and PATEL and WALLACE, JJ.

PER CURIAM.

In this subrogation action, plaintiff appeals as of right the trial court's order granting summary disposition to defendant. We reverse.

The facts in this case are not disputed. Plaintiff issued a homeowner's insurance policy to Paula Palazzola covering her home in Eastpointe, Michigan. In June 2022, defendant, who is Palazzola's grandson, accidentally started a fire in the basement of Palazzola's home. Plaintiff paid Palazzola $264,085.25 for the damages to her home and belongings under the terms of the homeowner's insurance policy. Plaintiff alleges that, having paid the claim to Palazzola, it became subrogated to her rights. Consequently, plaintiff filed the instant suit against defendant in March 2023, alleging that he negligently started the fire at Palazzola's house.

Defendant moved for summary disposition, arguing that under Michigan law an insurer cannot bring a subrogation action against its own insured. Defendant argued that he met the definition of an "insured person" in Palazzola's homeowner's insurance policy because he was related to Palazzola and "domiciled in [her] household." In response, plaintiff argued that defendant could not be an "insured person" covered by Palazzola's policy because defendant's father had sole physical custody under the terms of a 2007 custody order, meaning that defendant's domicile was his father's address on the date of the fire under *Grange Ins Co of Mich v Lawrence*, 494 Mich 475; 835 NW2d 363 (2013).

The trial court granted defendant's motion for summary disposition and dismissed the case in its entirety. In a written opinion, the court held that because the term "domicile" was not defined in the homeowner's insurance policy, "the word may be given its 'commonly understood

-1-

meaning,' which can be accomplished by referring to its dictionary definition." Quoting *Brown v Farm Bureau Gen Ins Co of Mich*, 273 Mich App 658, 662; 730 NW2d 518 (2007). The opinion noted dictionary definitions of "domicile" include "a dwelling place," and "a place of residence." Because the undisputed evidence showed that defendant was living at Palazzola's home five to seven days per week, the court held that he was domiciled at Palazzola's home within the ordinary meaning of the term. Accordingly, the court held that the plaintiff could not maintain a subrogation action against its own insured.[1]

Plaintiff contends on appeal that the trial court erred in giving the term "domicile," which was not defined in the policy, a meaning that was essentially synonymous with the term "reside," despite the fact that "domicile" has a different established legal definition in Michigan. We agree.

## I. STANDARD OF REVIEW

This Court reviews a trial court's decision to grant or deny summary disposition de novo. *Krieger v Dep't of Environment, Great Lakes, & Energy*, 348 Mich App 156, 170; 17 NW3d 700 (2023). Likewise, this Court reviews a trial court's interpretation of a contract de novo. *In re Estate of Koch*, 322 Mich App 383, 398; 912 NW2d 205 (2017); *Holland v Trinity Health Care Corp*, 287 Mich App 524, 526; 791 NW2d 724 (2010).

In the instant case, defendant moved for summary disposition under MCR 2.116(C)(8) and (C)(10), and the trial court granted the motion under MCR 2.116(C)(10). Because the parties and trial court looked beyond the pleadings and cited documentary evidence in respectively arguing and deciding the motion, we will treat the motion and trial court's decision as though it was made under MCR 2.116(C)(10) only. See *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 544; 904 NW2d 192 (2017).

A motion for summary disposition under MCR 2.116(C)(10) "tests the *factual sufficiency* of a claim." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019).

> When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*Id*. (quotation marks and citations omitted).]

"If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, whether summary disposition is proper is a question of law for the Court." *Estate of Miller v Angels' Place, Inc*, 334 Mich App 325, 330; 964 NW2d 839 (2020).

---

[1] The court distinguished the present case from *Grange* by noting that *Grange* interpreted the term "domicile" as defined by Michigan's no-fault insurance act, but that the present case involved a homeowners insurance policy, which is governed by its own terms, and reference to the no-fault act was inappropriate.

## II. PRINCIPLES OF CONTRACT INTERPRETATION

Plaintiff filed this action based on its right to subrogation under Palazzola's homeowner's insurance policy, which provides: "If we pay for any loss under Part I of this policy, we are entitled to all rights of recovery of the insured person against any other person or organization." Subrogation is "[t]he principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy." *State Auto Ins Cos v Velazquez*, 266 Mich App 726, 729; 703 NW2d 223 (2005) (quotation marks and citations omitted). This Court has previously noted with approval that "*there is no right of subrogation for an insurer against* either one who is covered as a named insured in relation to the loss at issue, or *any party who is covered as an additional insured in relation to that loss*." *Attard v Detroit Edison Co*, unpublished per curiam opinion of the Court of Appeals, issued December 18, 1998 (Docket No. 202960), p 3,[2] quoting Keeton & Widiss, Insurance Law, § 3.10(a)(1), p 221. Indeed, the policy at issue in the instant case provides that plaintiff is entitled to "all rights of recovery of the insured person *against any other person*," which implicitly limits plaintiff's subrogation rights to recovery from parties who are not "insured person[s]" within the meaning of the contract. (Emphasis added.)

Consequently, to determine whether plaintiff may maintain a subrogation action against defendant, we must first analyze whether defendant is an "insured person" under the terms of Palazzola's homeowner's insurance policy. The parties agree that this inquiry hinges on the interpretation of the word "domiciled" within the definition of "insured person" in the policy, which includes any relative "domiciled in your household."

Because insurance policies are contractual agreements, "[t]he rules of contract interpretation apply to the interpretation of insurance contracts." *McGrath v Allstate Ins Co*, 290 Mich App 434, 439; 802 NW2d 619 (2010). Accordingly, insurance contracts must be "read as a whole and must be construed to give effect to every word, clause, and phrase." *Id*. When the language of the contract is clear, courts must enforce the contract as written. *Id*. "However, if an ambiguity exists, it should be construed against the insurer." *Id*.

Insurance contract language is ambiguous if it is susceptible to more than one reasonable interpretation. *Id*. The mere fact that the policy does not define a term will not render the policy ambiguous. *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 354; 596 NW2d 190 (1999). Rather, when a contract term is not defined, the term should be given its plain and ordinary meaning. *McGrath*, 290 Mich App at 439. See also *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005) ("In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument."). This Court's goal when interpreting a contract is to honor the contracting parties'

---

[2] "Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive value." *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).

intent. *Kyocera Corp v Hemlock Semiconductor, LLC*, 313 Mich App 437, 446; 886 NW2d 445 (2015). The best evidence of the parties' intent is the language used in the contract. *Id*.

When the language used in the contract has a definite legal meaning, "the parties to the contract are presumed to have intended such terms to have their proper legal meaning, absent a contrary intention appearing in the instrument." *Prentis Family Foundation, Inc v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 58; 698 NW2d 900 (2005) (quotation marks citation omitted). See also *Lewis v Farmers Ins Exch*, 315 Mich App 202, 217; 888 NW2d 916 (2016). However, "[w]hen considering a word or phrase that has not been given prior legal meaning, resort to a lay dictionary such as *Webster's* is appropriate." *Citizens Ins Co v Pro-Seal Serv Group, Inc*, 477 Mich 75, 84; 730 NW2d 682 (2007), quoting *Greene v AP Prods, Ltd*, 475 Mich 502, 510; 717 NW2d 855 (2006) (quotation marks omitted).

When insurance coverage is mandated by statute, then the "the statute is the 'rule book' for deciding the issues involved in questions regarding awarding those benefits." *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 525; 502 NW2d 310 (1993). See also *Meemic Ins Co v Fortson*, 506 Mich 287, 297-298; 954 NW2d 115 (2020) ("[O]ne thing that is not open to debate is that the [no-fault] act governs the coverages it mandates . . . ."). Consequently, when interpreting a statute requiring insurance coverage, a court must adhere to the principles of *statutory* construction. *Twichel v MIC Gen Ins Corp*, 469 Mich 524, 528; 676 NW2d 616 (2004). Under the rules of statutory construction, "[a]ll words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning." MCL 8.3a.

When an insurance policy is not mandated by statute, the policy is interpreted using the ordinary principles of contract interpretation. *Twichel*, 469 Mich at 533 ("Uninsured motorist benefit clauses are construed without reference to the no-fault act because such insurance is not required under the act.").

## III. USE OF "DOMICILED" IN PALAZZOLA'S HOMEOWNER'S INSURANCE POLICY

Using the principles described above as a guide, we now turn to the language in Palazzola's insurance policy. An "insured person" in the policy is defined as follows:

**Insured person(s)** means **you** and, if domiciled in **your** household:

a) any relative; and

b) any person under the age of 21 in **your** care.[3]

"Domiciled" is not separately defined in the policy, nor is the term used elsewhere in the policy. However, at the time of the subject accident, "domicile" had a definite meaning that was well rooted in Michigan's common law. "For over 165 years, Michigan courts have defined 'domicile' to mean 'the place where a person has his true, fixed, permanent home, and principal

---

[3] We note that words appearing in bold are specifically defined in the contract.

establishment, and to which, whenever he is absent, he has the intention of returning.' " *Grange*, 494 Mich at 493, quoting *In re High*, 2 Doug 515, 523 (Mich, 1847).

Under Michigan law, the definition of "domicile" as it pertains to an adult is different than the definition of "domicile" for a minor. As our Supreme Court in *Grange* explained, an unemancipated minor lacks the legal capacity to choose their domicile.[4] *Id*. at 502-503. As a result, while the intent of an adult is a critical consideration when determining domicile, "a child's intent regarding domicile is simply irrelevant."[5] *Id*. at 503. "Instead, the child's domicile is determined by reference to the domicile of his or her parents." *Id*. When a child is born, he or she acquires a domicile of origin, which remains their domicile "until a new domicile is acquired through the actions of the child's parents or until that point in time when the minor, either through emancipation or by reaching the age of majority, can acquire a domicile of choice." *Id*. Under Michigan law, "a child may have only one domicile at any one time." *Id*. at 501. Regarding a minor child whose parents have divorced, the Court noted that, under Michigan's common law, "a child's domicile upon the divorce of his parents and entry of a custody order is established by operation of law consistent with the terms of the custody order." *Id*. at 505. In affirming these common law principles, the *Grange* Court stated:

> Just as a person does not have two domiciles, a person likewise does not have a domicile set by operation of law for some purposes and perhaps a different domicile for other purposes—such as for consideration under the no-fault act or any other statute that uses the term "domicile." A person's domicile for one purpose is his domicile for all purposes; similarly, a child does not have a domicile set by court order only for certain purposes, but not others. [*Id*.]

Turning to the instant case, there is no dispute that the custody order awarded physical custody of defendant to his father, who did not live at Palazzola's home. The term "domicile," as it pertains to a minor of divorced parents, has a definite legal meaning: the minor is domiciled with the parent who has court ordered physical custody. Defendant thus was domiciled at his father's home, not Palazzola's.[6]

---

[4] For this proposition, the Court relied, *inter alia*, upon *Yarborough v Yarborough*, 290 US 202, 211; 54 S Ct 181; 78 L Ed 269 (1933) ("[Minor child] was not capable by her own act of changing her domicile."). *Grange*, 494 Mich at 503 n 53. Quoting MCL 722.4e(1)(d), the Court noted that "[o]ur Legislature has recognized that unemancipated minors lack the necessary legal capacity to acquire a domicile of choice by expressly granting emancipated minors 'the right to establish a separate domicile.' " *Id*.

[5] For this proposition, the Court cited to *Mississippi Band of Choctaw Indians v Holyfield*, 490 US 30, 48; 109 S Ct 1597; 103 L Ed 2d 269 (1989) ("[Generally, a child's] domicile is determined by that of their parents.") and *Lamar v Micou*, 112 US 452, 470; 5 S Ct 221; 28 L Ed 751 (1884) (stating the general rule that the domicile of an infant follows that of his father). *Grange*, 494 Mich at 503 n 54.

[6] Plaintiff could have defined the term "domicile" in the policy differently, but it did not do so.

Defendant argues that *Grange* is inapplicable to his case because its holding interpreted the term "domicile" contained in § 3114 of Michigan's no-fault insurance act (no-fault act), MCL 500.3101 *et seq*., and the present case indisputably does not involve the no-fault act. But *Grange* involved examining the meaning of a minor's domicile *outside* the context of the no-fault act and adopting that analysis to define the term in the statute. *Grange* is therefore relevant to examining the definition of "domicile" here. Because the contract in this case does not provide its own definition of "domiciled," we must give the term its recognized legal meaning at the time of the accident. Under recognized Michigan law, defendant was domiciled at his father's home pursuant to the custody order then in effect.

Defendant also argues that, because the term "domiciled" is an undefined term contained in a contract, as opposed to a term contained in a statute that is subject to statutory interpretation, it should be given its ordinary nontechnical meaning, which defendant alleges to be synonymous with the term "residing," based upon certain dictionaries cited by defendant. But, as noted above, because the term "domicile" has a definite legal meaning, both for adults and for minors, the parties are presumed to have intended such terms to have their proper legal meaning. *Prentis Family Foundation*, 266 Mich App at 58.

Our reading of the contract term "domiciled" is consistent with the intent of the parties. While the term "reside" appears multiple times in the contract, the term "domiciled" appears only once, in the section at issue in this appeal, suggesting that the two words have different meanings under the contract. For example, paragraph 7 of the definition section of the policy says "**Dwelling** means the single-family **building structure**, identified as the insured property on the Declaration Certificate, where **you** reside and which is principally used as a private residence." The term "you" is defined as "the person listed under Named Insured(s) on the Declaration Certificate, as the insured and that person's resident spouse." Thus, reading the insurance policy *as a whole*, the intention of the parties is clear—whereas the named insured is covered by the policy as long as they *reside* at the dwelling, a relative is only covered by the policy if they are *domiciled* in the household of the named insured or resident spouse.[7] See *McGrath*, 290 Mich App at 439. Were we to read the terms "reside" and "domiciled" synonymously, we would be improperly negating the recognized meaning of the term "domiciled," and the intent of the parties.

Accordingly, the trial court erred by not interpreting the term "domiciled" by its recognized meaning under Michigan law. Defendant was not "domiciled" at Palazzola's home at the time of the fire, and therefore, he was not an "insured person" within the meaning of Palazzola's homeowner's insurance policy. Because defendant is not an insured, the subrogation provision in Palazzola's policy that does not allow plaintiff to bring a subrogation action against its insured

---

[7] The effect of this clause is that a named insured is covered under the policy, even if they have multiple residences, as long as the dwelling is one of those residences, i.e., the dwelling is not required to be the named insured's domicile. So, for example, a named insured who lived seven months out of the year in another state, but who lived the remaining five months of the year at the dwelling in Michigan, would be covered by the policy.

does not apply to defendant.  As a result, the court erred when it granted summary disposition in favor of defendant.

We reverse the order of the trial court granting summary disposition in favor defendant and remand this case to the trial court for proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Christopher M. Trebilcock
/s/ Sima G. Patel
/s/ Randy J. Wallace