## George Raymond and another v. Jacob Shawboose and others.

*Equity jurisprudence: Amount.* An objection to a bill for specific performance, that it fails to aver the value of the lands to exceed one hundred dollars, is not sustained where it appears from it that complainants paid more than that sum.

*Indian treaty of October 18, 1864: Competency: Selection.* Under the practical interpretation put on the Indian treaty of October 18, 1864, by the government, the selection of lands and the competency of the grantees both became operative together when fixed by the proper official authority, and both were before that ambulatory.

*Indian treaty: Sales of lands: Competency.* No disposition by an Indian of lands he expected to receive under this treaty, which antedates the determination of his competency to take under the terms of the treaty, can be held valid.

*Indian agents: Decisions: Fraud: Executive department.* The executive department is not so bound by the conduct of Indian agents that it cannot repudiate their frauds and decline to follow their false decisions.

*Specific performance: Cloud upon title: Decree: Remedy at law: Costs.* Where, under a bill for specific performance, both parties have proceeded without objection upon a hypothesis that would make a subsequent deed given by the vendor to his co-defendants a cloud upon the title, the court, though holding such deed of no force, and that complainants' remedy at law was ample, affirmed the decree below requiring defendants to release to complainants, though without costs to either party.

*Heard April 18 and 19.     Decided June 6.*

Appeal in Chancery from Isabella Circuit.

*John J. Wheeler,* for complainants, to the point that the grantor having an equitable or inchoate title when he

conveyed, the patent afterwards obtained enured to his grantee in the prior conveyance, though there was no covenant in the deed, cited: *Doe v. Wilson, 23 How., 457; Maxwell v. Moore, 22 How., 185; Berthold v. McDonald, Ib., 334; Ward v. Bartholomew, 6 Pick., 409; French v. Spencer, 21 How., 228; Quinney v. Denny, 18 Wis., 485; Crews v. Burnham, 1 Black, 352; Corbin v. Jackson, 14 Wend., 619; Jackson v. Livingston, 7 Wend., 136; Jackson v. Alexander, 3 Johns., 484; Jackson v. Root, 18 Johns., 90; 10 How., 348; 14 Gray, 495, 497; 2 Allen, 118; 29 Ia., 276; 13 Cal., 536; 5 Allen, 548;* and the deed in question here contains covenants of warranty, therefore the title acquired afterwards enured to the grantee by estoppel: *3 Wash. R. P., 102 and cases cited; 21 How., 228; 18 Wis., 486; 1 Black, 352; 3 Johns., 484; 10 How., 374; 11 How., 325; 22 How., 190;* the grant by the treaty, of the reserved sections, is a present grant of the interest of the United States in the lands within its terms, and the patent is only required to designate the particular selection made: *14 U. S. Stat. at Large, p. 3; Johnson v. Ballou, 28 Mich., 379; Busch v. Donohue, 31 Mich., 481; Clark v. West, 23 Mich., 242;* the patent, having issued to this Indian, is conclusive proof of his ownership, and relates back to the ratification of the treaty, and his assignee is vested with the legal title: *Doe v. Wilson, supra; Shotwell v. Harrison, 22 Mich., 410; Clark v. Hall, 19 Mich., 357.*

*John C. Leaton* and *W. N. Brown,* for defendants, on the subject of jurisdiction as affected by the amount in controversy, cited: *Comp. L. 1871, § 5059; White v. Fuller, Walk. Ch., 112; Gamber v. Holden, 5 Mich., 331; Spears v. Gwinn, 9 Paige, 362;* that the treaty does not directly or impliedly authorize the delegation by the beneficiary of the right of selection to any body,

see *Johnson v. McIntosh, 8 Wheat., 543 and cases cited; U. S. v. Cook, 19 Wall., 591; Ballou v. O'Brien, 20 Mich., 304;* if Shawboose at time of conveying to complainants had any rights to the lands described, it was a right in common with the other members of the tribe, he not having then made any selection: *Walker v. Henshaw, 16 Wall., 436; U. S. v. Cook, supra;* selection was not made within the meaning of the treaty till approved by the commissioner of Indian affairs, March 29, 1872; and all that was contracted for by complainants' deed of July 14, 1871, was a mere right of selection; and the beneficiary could not sell his selection, or right of selection, before he had become entitled to any parcel in severalty, as this would render the classification provided for by the treaty nugatory; the right of selection is a personal privilege and not salable: *Clark v. Baker, 14 Cal., 612.*

CAMPBELL, J :

Jacob Shawboose is an Indian belonging to the band of Chippewas of Saginaw, Swan Creek, and Black River, in the state of Michigan, and entitled as head of a family to eighty acres of land, concerning forty of which the present controversy arises. Under the treaty of October 18, 1864, it was provided that as soon as practicable after the ratification of the treaty the agent for the said Indians should make out a list of those entitled to selections under the provisions of the treaty, and divide the persons enumerated in said list into two classes, viz.: "competent" and those "not so competent." Those who were intelligent, and have sufficient education, and are qualified by business habits to prudently manage their affairs, shall be set down as "competent." Those who were uneducated, etc., and all orphans, and all persons of idle, wandering, or dissolute habits, were to be put in the other list. Patents were to be issued in

fee simple to "competents." The patents to persons "not so competent" were to contain a clause against alienation without the consent of the secretary of the interior.

July 14, 1871, Shawboose, who appears to have selected the northeast quarter of the southeast quarter of section twenty-eight, in town fifteen north, of range three west, made a deed to complainants whereby he conveyed those premises, but limited the interest conveyed to the pine trees and timber, and the use of the land for lumbering the same. The deed contained this further provision: "It is expressly understood that the said first party sells and conveys all pine trees and timber of which said party is or may become possessed under and by virtue of said treaty; therefore, to carry out the meaning and intent and purposes of this conveyance, the said first party hereby gives unto the second parties full and complete permission to change the above description of land so that the same description shall be embraced in the government land patent which may be issued to said first party."

On the 21st of January, 1872, Irving E. Arnold, an agent of complainants', gave to the Indian agents at Detroit as Shawboose's selection the northwest quarter of the southeast quarter of section twenty-five, in township fifteen north, of range three west, and on the 20th of August a patent was issued for this parcel, reciting an order of the secretary of the interior dated April 1, 1872, accompanied by a schedule of selections certified, March 29, 1872, by the commissioner of Indian affairs, to have been made by the members of the band, and that in said schedule the tract in question "is designated as the selection of Jacob Shawboose, who is denominated a 'competent,' and in whose favor a patent is ordered to be issued."

On the 26th day of September, 1872, Shawboose made a new conveyance to complainants of the pine timber on this land, and the right to enter on the land and cut the timber and remove it at any time within two years.

The deed of July, 1871, was filed with the register of

31 MICH.—19.

deeds of Isabella county, but was not recorded until after defendants obtained their alleged title.

On the 26th day of January, 1872, a deed was executed by Shawboose to defendants Hill and Gamble, which first purports to convey the land afterwards patented, and all the pine timber on any land he had received on any treaty, and all claims for trespasses on such lands, and then appoints William H. Hill his attorney in fact "to select any land to which he is entitled under above treaty, and to sell any he may thus select as follows: The pine timber suitable for saw logs for one dollar per thousand; the oak and ash for two dollars and fifty cents, cubic; and the land for one dollar and twenty-five cents per acre, to be paid within six months after the receipt of the patent for the land." This power of attorney was declared irrevocable for two years. The deed was recorded January 27, 1872, but the acknowledgment was erroneously dated in July, 1871.

The bill avers this deed to have been obtained by fraud, by deceiving Shawboose into supposing it was something else, and charges notice of complainants' rights. The bill prays specific performance of the agreement of July, 1871, in the deed of that date, and for general relief.

This bill was filed in September, 1873. Defendants put in a brief, unsigned answer, which neither admitted nor denied any thing, but which, instead of striking from the files, complainants replied to. A decree was made in complainants' favor, for a release from Hill and Gamble.

An objection was made that it does not appear that the amount in controversy exceeds one hundred dollars. It does appear that plaintiffs paid more than that sum, and it may be presumed it was not an over payment.

There is no claim in the answer that defendants were *bona fide* purchasers without notice, and the testimony does not lead to that inference if they had set up such a defense. But they seem to rely on the fact that their interest, having been conveyed after the selection, is to be preferred to complainants' interest, which was agreed for before; and upon

the further fact that their deed describes the premises in question, while complainants' deed of July, 1871, does not.

Both parties, so far as their earlier conveyances are concerned, rely on them as operating by way of covenant or estoppel to reach the land thereafter patented. Defendants, however, claim that Shawboose's right became fixed when he made the selection, and that the conveyance to them, therefore, was good at law as a present grant.

We are entirely satisfied that Shawboose, who was a marksman and illiterate, was misled into signing this paper by being made to believe it was merely authority for selecting and disposing of other land than what he had authorized complainants to select and use; and that he distinctly informed defendants of his arrangement with complainants, and was told the paper would only cover such possible further selections as he might have the right to make. He thought and said he had exhausted his rights, as he had in fact.

There is no sort of question that Shawboose never meant to cheat complainants. The deed of January, 1872, was a manifest fraud on him. But the peculiar nature of the controversy renders it necessary to consider the real character of the rights of Shawboose himself.

The treaty of 1864 was a modification of one of 1855, whereby the same right of selection was given to each head of a family, to receive eighty acres of land.—*L. U. S., Vol. 11, p. 633.* By the earlier treaty, lists of Indians were to be made out by July 1, 1856, and not later. Certificates were to issue for the selections, which could not be assigned or transferred, and patents were not to issue until ten years thereafter. But the president was empowered, in such cases as might render the grantee unfit to dispose of his property, to provide against its conveyance by the patentee.

The treaty of 1864 required the selections and lists to be made "as soon as practicable," by the agent. It evidently assumed that the lands would be selected and patented to all persons capable of choosing for themselves without delay,

and it probably did not contemplate any needless changes, or any changes at all in the lists. No evidence is before us of the regulations adopted by the land office for making and changing selections. It is apparent from some circumstances shown incidentally that all of the local transactions were not such as would have been approved at Washington. So far as we can judge no report was made of the competency of the parties except in connection with the selections. In the interval of six years between the treaty and the patent, many "orphans," who were positively disqualified by the treaty, must have reached full age; some may have lost the disqualification of ignorance, and some may have gained that of idleness and bad habits.

The result of the practical interpretation put on the treaty by the government is, that the selection of lands and the competency of the grantees both became operative together when fixed by the proper official authority, and both were before ambulatory.

Where a standard of competency is adopted, and the right of a patentee to dispose of his lands depends on his classification, we think the policy of the government is against maintaining any transaction made before that determination. A contract in such cases must be good or bad when made. In other words, the Indian is incapable until his competency is declared, and it does not relate backward. If any other rule is adopted it must be ruinous, because the Indians would be cheated out of their lands, and no one would pay a decent price for a voidable bargain. And the treaty evidently contemplates that one may become competent who was once incompetent, by reaching majority, or becoming educated, or reforming. It would be impossible in any case to know what certificate would have been given by an agent at any date before that on which he acts. In the present case it appears there was official action by a former deceased agent, whose papers were lost, but who may not have deemed Shawboose competent. While the patent is conclusive for what it asserts, yet the evidence is also morally conclusive that

the designation of Shawboose as competent was itself a very gross violation of the treaty, which contemplated education as indispensable.    Shawboose can neither read nor write, and was helpless in the hands of these parties.    It is certainly to be hoped, and for the honor of human nature must be presumed, that no certificate of competency was or could have been given by any previous agent or at any previous time.

We feel bound to hold, until otherwise decided by the United States supreme court, that no disposition of lands under this treaty can be valid which antedates the determination of the grantee's competency.

The question then arises, at what time that was so fixed. The patent refers only to the determination by the commissioner of Indian affairs, on the 29th day of March, 1872, approved by the secretary of the interior on the 1st of April. We think this was the first official action which bound the government.

We cannot accept the doctrine that the executive department is so bound by the conduct of Indian agents that it cannot repudiate their frauds and decline to follow their false decisions.    The treaty of 1855 expressly recognized the duty of the president to guard the Indians from being enabled to dispose of lands when not competent to manage their own interests.    A treaty is a contract with the nation, and when the executive has to carry it out by granting patents which distinguish between competent and incompetent grantees, who are to be classified by his own subordinate officials, it is more consistent with our system to regard all of these agents as under executive supervision, than to recognize in them a power to compel their superiors to carry out what they may be satisfied is a fraudulent arrangement.

We shall, therefore, until otherwise decided by the supreme court, hold that the United States government was not bound until the action was had by the Indian department on the 29th of March, 1872, as set forth in the patent.

It follows from this that complainants have no claim going back of their conveyance made subsequent to the patent, and that Hill and Gamble have no claim at all. Complainants' remedy against trespass would be ample at law.

As both parties, however, rested their claims and arguments on a hypothesis which would have made defendants' deed a cloud upon complainants' title, and no such objection was made to the jurisdiction, we do not think it worth while to disturb so much of the decree as requires defendants to release to complainants. Shawboose has not appealed, and has waived the two years' condition (*Green v. Bennett, 23 Mich.; 464*), and the equities are against Hill and Gamble. But we think neither party should recover costs in this court. The decree will be modified accordingly.

The other Justices concurred.