*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MAPLE MANOR REHABILITATION CENTER, LLC,

UNPUBLISHED
April 27, 2023

Plaintiff-Appellant/Cross-Appellee,

v

No. 359147
Wayne Circuit Court
LC No. 20-000301-CB

EVANSTON INSURANCE COMPANY,

Defendant-Appellee/Cross-Appellant.

Before: CAVANAGH, P.J., and SERVITTO and GARRETT, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court order granting summary disposition in defendant's favor under MCR 2.116(C)(10) (no genuine issue of material fact) and the trial court order granting in part and denying in part defendant's motion for costs and attorney fees. Defendant cross appeals the trial court order granting in part and denying in part its motion for costs and attorney fees. We affirm the grant of summary disposition in defendant's favor, reverse the trial court's order awarding only part of defendant's requested attorney fees, and remand for entry of an order awarding defendant all of its requested attorney fees.

## I. FACTS

The underlying facts in this matter are largely undisputed. Dorothy Irvine, 88 years old, was admitted to plaintiff, Maple Manor Rehabilitation Center ("Maple Manor"), on November 25, 2014, after a hospital stay. Irvine had a significant health history that included COPD,[1] nephrolithiasis, osteoarthritis, abdominal aortic aneurysm, diverticulosis, peripheral neuropathy, vertigo, hypothyroidism, esophageal varices, dementia, and thrombocytopenia. On or about December 11, 2014, she was found lying on the floor at the rehabilitation center. She appeared injured and was taken to the emergency room at Annapolis Hospital after the unwitnessed fall. A

---

[1] Chronic obstructive pulmonary disease.

computed tomography (CT) scan performed there revealed an "acute on chronic subdural hematoma"[2] and she was transferred to Garden City Hospital ("the Hospital") for further work up and management.

Upon admission to the Hospital, Irvine was noted to have a left head hematoma, left wrist fracture, and right rib fracture. A repeat CT scan performed at Garden City Hospital on December 12, 2014, revealed no significant interval change from a scan previously conducted on November 6, 2014. While in the hospital, however, Irvine was found to have a urinary tract infection, worsening mental state, difficulty swallowing, and metabolic abnormalities. She passed away at the Hospital on December 16, 2014. Irvine's death certificate, issued December 17, 2014, indicated that the cause of her death was atherosclerotic cardiovascular disease and the manner of her death was natural.

On August 18, 2015, Irvine's son called the Wayne County Medical Examiner's Office and reported that Irvine's death was related to a fall at Maple Manor and that the manner of her death was thus accidental. The medical examiner's office thereafter obtained some, but not all, of Irvine's information and medical records from the Hospital, which led it to believe that while at Maple Manor on December 11, 2014, Irvine fell from her wheelchair and hit her head on the floor. Thus, the medical examiner issued an amendment to change the cause of death to subdural hematoma and the manner of death to accident. An amended death certificate was issued to reflect those changes.

On July 20, 2017, Irvine's son, as personal representative of Irvine's estate, filed a wrongful death lawsuit against Maple Manor, asserting negligence ("the Irvine lawsuit"). At the time the Irvine lawsuit was filed, Maple Manor had a professional insurance policy in place with Evanston Insurance Company ("defendant"). However, Maple Manor did not notify defendant of the Irvine lawsuit when it was filed. Rather, Maple Manor defended the Irvine lawsuit itself. As the Irvine lawsuit proceeded through discovery, Maple Manor subpoenaed the medical examiner's office for all medical records and documents relating to Irvine and the medical examiner forwarded the request to the Hospital. After obtaining all of the requested medical records, the medical examiner issued an October 30, 2018 post mortem report stating that "the December 11, 2014 fall did not produce any intracranial injuries that caused or contributed to death." Irvine's death certificate was then amended back to its original form.

The Irvine lawsuit nonetheless proceeded and Maple Manor continued to defend itself through discovery, various motions, and through case evaluation in November 2018. On June 7, 2019, Maple Manor reported the Irvine lawsuit to Risk Placement Services, Inc., an insurance broker through which Maple Manor had obtained its insurance policy with defendant, and Risk Placement Services then filed a first notice of loss with defendant. On June 12, 2019, defendant denied the request, stating it was not notified of the claim in a timely manner as required by the insurance policy, and that because Maple Manor had cancelled coverage with defendant prior to having notified defendant of the Irvine lawsuit, there was no coverage available to Maple Manor.

---

[2] A second episode of acute hemorrhage into a pre-existing chronic subdural hematoma.

In the meantime, Maple Manor and Irvine's estate reached an agreement to participate in arbitration with a further agreement that the arbitration award would have a set low/high amount of $10,000/$100,000. On or about June 13, 2019, an order was entered dismissing the Irvine lawsuit with prejudice. The Irvine lawsuit was closed in the trial court in October 2019.

In January 2020, Maple Manor filed a complaint against defendant for breach of contract. Maple Manor asserted that it made numerous demands for insurance coverage and legal defense to defendant for the Irvine lawsuit and defendant wrongfully denied coverage. Maple Manor sought declarations that defendant must provide insurance coverage, legal defense, and indemnification to it, must reimburse plaintiff for all attorney fees and costs of litigation so far expended in the Irvine lawsuit, and an order that defendant participate in the currently scheduled arbitration with Irvine's estate. Alternatively, Maple Manor requested that the trial court order defendant to refund all insurance premiums Maple Manor had paid to it for failure to provide insurance coverage.

Defendant moved for summary disposition under MCR 2.116(C)(10), asserting the policy issued to Maple Manor contained language requiring that claims be made during the policy period, and reported to defendant "as soon as practicable," including "immediately" forwarding to Evanston any legal process in order to qualify for coverage. Defendant claimed there was no question of fact that Maple Manor did not comply with these policy terms. Maple Manor responded because there were still four months of discovery left and several key discovery items (such as depositions and requests for the insurance claims file) outstanding, summary disposition would be premature. Maple Manor also claimed that whether it notified defendant of the lawsuit "as soon as practicable" was a question of fact, because defendant initially misrepresented to Maple Manor that it had no insurance coverage with defendant and that Maple Manor therefore undertook to defend against the lawsuit on its own. It was only when Maple Manor re-investigated its insurance coverage that it discovered its policy with defendant was, in fact, in effect when the lawsuit was filed. The trial court denied defendant's motion.

After the close of discovery, defendant again moved for summary disposition under MCR 2.116(C)(10). Defendant reasserted essentially the same facts and arguments it had in its prior motion and averred there were no questions of fact that Maple Manor breached the policy's notice provisions and that Maple Manor litigated the entire Irvine lawsuit to the steps of trial before providing notice less than two weeks before trial, by which time the policy was ineffective. The trial court agreed, finding that notice provided 18 months after the Irvine lawsuit had been filed was not "as soon as practicable" under the circumstances. The trial court further opined that defendant was prejudiced by the late notice because Maple Manor took away any flexibility on how defendant would have defended the case, who it would have selected as counsel, what strategies it would have employed, etc. Now, because of the late notice, defendant would be saddled with Maple Manor's choice to have the Irvine lawsuit, which Maple Manor consistently claimed was frivolous, arbitrated with a $10,000 low/$100,000 high. Finally, the trial court found *Schubiner v New England Ins Co*, 207 Mich App 330, 331; 523 NW2d 635 (1994) instructive and concluded that even if defendant had suffered no prejudice, there were no material questions of fact such that defendant was entitled to summary disposition. On June 18, 2021, the trial court entered an order granting summary disposition in defendant's favor.

Defendant thereafter moved for attorney fees and costs pursuant to MCR 2.625(A)(2), MCL 600.2591, MCR 2.313(C)(2), MCR 2.306(D)(2), MCR 1.109(E). Defendant sought attorney fees in the amount of $26,581.60 plus costs in the amount of $491.20, based primarily on its assertion that Maple Manor's lawsuit was frivolous. The trial court granted defendant's motion in part and denied it in part, awarding defendant $491.20 as prevailing party costs, as well as attorney fees incurred after the September 8, 2020 hearing on defendant's first summary disposition motion in the amount of $13,708.80 "for plaintiff's failure to provide reasonable basis for its position." The trial court denied Maple Manor's motions for reconsideration and motion for relief from judgment and these appeals followed.

## II. SUMMARY DISPOSITION

Maple Manor asserts on appeal that the trial court erred in granting summary disposition in defendant's favor because not only did it arguably provide notice of the Irvine lawsuit to defendant "as soon as practicable," but the trial court engaged in inappropriate fact-finding in determining that Maple Manor did not provide notice in that undefined timeframe and in determining that defendant had suffered actual prejudice due to Maple Manor's alleged failure to provide notice of the Irvine lawsuit "as soon as practicable." We disagree.

We review de novo a trial court's decision regarding a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion for summary disposition made under MCR 2.116(C)(10) tests the factual sufficiency of the complaint, and the court considers all affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion in determining whether the evidence establishes the existence of a genuine issue of material fact or whether the moving party is instead entitled to judgment as a matter of law. *Id.* at 120. As stated in *Bernardoni v City of Saginaw*, 499 Mich 470, 472–73; 886 NW2d 109 (2016):

> When a motion under subrule (C)(10) is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, judgment, if appropriate, shall be entered against him or her. [quoting MCR 2.116(G)(4)]

Resolution of this matter turning primarily upon the language in the insurance policy defendant issued to Maple Manor, we note that the construction and interpretation of contracts, which includes insurance policies, are questions of law that we also review de novo. *Farmers Ins Exch v Kurzmann*, 257 Mich App 412, 416–17; 668 NW2d 199 (2003). As succinctly stated in *McGrath v Allstate Ins Co*, 290 Mich App 434, 439; 802 NW2d 619 (2010):

> The rules of contract interpretation apply to the interpretation of insurance contracts. *Citizens Ins Co v Pro–Seal Serv Group, Inc,* 477 Mich 75, 82; 730 NW2d 682 (2007). The language of insurance contracts should be read as a whole and must be construed to give effect to every word, clause, and phrase. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003). When the

policy language is clear, a court must enforce the specific language of the contract. *Heniser v Frankenmuth Mut Ins Co*, 449 Mich 155, 160; 534 NW2d 502 (1995).

If a contract is ambiguous, however, the meaning of such ambiguous contract is a question of fact that must be decided by the jury. *Klapp*, 468 Mich at 469. "An insurance contract is ambiguous when its provisions are capable of conflicting interpretations." *Id*. at 467, quoting *Farm Bureau Mut Ins Co v Nikkel*, 460 Mich 558, 566; 596 NW2d 915 (1999). Notably, an insurance contract is not ambiguous merely because a term is not defined in the contract. *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 515; 773 NW2d 758 (2009). Instead, any terms not defined in the contract should be given their plain and ordinary meaning. *Id*.

At the time the Irvine lawsuit was filed on July 20, 2017, Maple Manor had an insurance policy with defendant effective for the period of December 10, 2016 to December 10, 2017, that provided, in relevant part, as follows:

> DECLARATIONS SPECIFIED MEDICAL PROFESSIONS INSURANCE POLICY
>
> Claims Made: Under certain Coverage Parts of this policy, the coverage afforded is limited to liability for only those Claims that are first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, and reported to the Company pursuant to the terms herein. Refer to each Coverage Part's opening page to determine if that Coverage Part is Claims Made.

A "claims made" policy generally protects the insured only against claims made during the life of the policy. *Stine v Continental Cas Co*, 419 Mich 89, 98; 349 NW2d 127 (1984). Such policies enable an insurer to underwrite risk, compute premiums, and establish reserves with greater accuracy, safe in the assumption that liability will be limited to claims actually made during the term of the policy for which the premium is computed. "As a result, the insurer is better able to predict the limits of its exposure and more accurately estimate the premium rate schedule necessary to accommodate the risk undertaken." *Id*. at 100. At the same time, the insured benefits from a "claims made" policy in that the insurer may be able to charge a lower premium than would be necessary for an occurrence policy, the insured may be able to purchase insurance to cover acts or omissions during a period that pre-date the inception of the policy, and such policies may provide excess coverage to a professional person in addition to "occurrence" policy coverage purchased much earlier. *Id*.

The policy defendant issued to Maple Manor further stated that the specified "Medical Professions Professional Liability Insurance Coverage Part" is a "claims made" coverage part. That part of the insurance policy stated:

> **INSURING AGREEMENT**
>
> **A. Professional Liability and Claims Made Clause**: The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of a Claim first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company

pursuant to Section CLAIMS A., Claim Reporting Provision, for Professional Personal Injury:

**1**. By reason of any act, error or omission in Professional Services arising out of the conduct of the Insured's Professional Services rendered or that should have been rendered by an Insured; or

**2**. By reason of any act, error or omission in Professional Services arising out of the conduct of the Insured's Professional Services rendered or that should have been rendered by a natural person, who is not and shall not be an Insured hereunder, and through whose acts the Insured controls the provider-patient relationship as of the time of such act, error or omission;

provided:

**a**. The act, error or omission happens during the Policy Period or on or after the Retroactive Date stated in the Declarations and before the end of the Policy Period; and

**b**. Prior to the effective date of this policy the Insured had no knowledge of such act, error or omission or any fact, circumstance, situation or incident which may lead a reasonable person in the insured's position to conclude that a Claim was likely.

The "Definitions" section of the policy defines "Claim" as the Insured's receipt of "a written demand for Damages or Professional Services" or "the service of suit or institution or arbitration proceedings against the Insured seeking Damages."

The "CLAIMS" section of the policy states as follows:

**A. Claim Reporting Provision**: It is a condition precedent to coverage afforded by this Coverage Part that the Insured shall give to the Company written notice as stated in the Notices item of the Declarations as soon as practicable of any Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised. In the event suit is brought against the Insured, the Insured shall immediately forward to Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois, 60015, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

Maple Manor does not contend that it provided written notice of the lawsuit to defendant prior to the June 7, 2019 date defendant claims it first received notice. Instead, Maple Manor asserts that the language "as soon as practicable" is ambiguous such that it was a question of fact whether its June 2019 notice complied with the insurance policy. As previously stated, however, just because a term is not defined in an insurance policy does not mean that the policy, or even the term is ambiguous. *Vushaj*, 284 Mich App at 515.

For well over one hundred years, our jurisprudene has used the phrase "as soon as practicable." See, e.g., *Campau v City of Detroit*, 14 Mich 276, 283 (1866). The phrase "as soon

as practicable" has, without exception, assumed a working definition with a very specific legal understanding—that of being within a reasonable time under the circumstances. See *Raymond v Shawboose*, 34 Mich 142, 147 (1876)("The treaty of 1864 required the selections and lists to be made 'as soon as practicable,' by the agent. It evidently assumed that the lands would be selected and patented to all persons capable of choosing for themselves without delay."); *Murphy v Gifford*, 228 Mich 287, 296–297; 200 NW 263 (1924)("It was defendant's duty under the circumstances shown here to fully inspect and test the machine after it had been installed and turned over to him as soon as practicable—within a reasonable time—and, if he had reason and desired to rescind, to thereafter promptly give notice to plaintiff."); *Kennedy v Dashner*, 319 Mich 491, 494; 30 NW2d 46 (1947)("The policy involved requires that the notice is to be given 'as soon as practicable.' [T]he general meaning of the terms has been held to be a reasonable time, dependent upon the facts and circumstances of the case."); *Motor State Ins Co v Benton*, 35 Mich App 287, 290; 192 NW2d 385 (1971) ("The clause 'as soon as practicable' is interpreted to mean 'a reasonable time, dependent upon the facts and circumstances of the case.').

Here, the Irvine lawsuit was filed against Maple Manor on July 20, 2017 and Maple Manor promptly responded to the lawsuit, then proceeded to defend against the lawsuit, including engaging in discovery, motion practice and case evaluation. On June 7, 2019, almost two years after the lawsuit was filed, Maple Manor notified defendant of the wrongful death lawsuit. Nearly two years is not a reasonable amount of time in any circumstance where Maple Manor fully participated in the lawsuit with the same attorneys it has now and has offered no justifiable excuse and identified no impediment to informing defendant of the Irvine lawsuit prior. Maple Manor has offered no substantive argument or case law suggesting that it is and we find none.

Notably, our Supreme Court has stated that "Where the facts are uncertain or disputed, and the inferences doubtful, the question whether timely notice was given is one for the jury under proper instructions; but, where the facts are not in dispute, and the inferences are certain, it is a question of law for the court." *Wehner v Foster*, 331 Mich 113, 121; 49 NW2d 87 (1951). Here, the facts are not in dispute and the inferences are certain. The only "fact" Maple Manor claims is in dispute is whether it may have contacted someone associated with defendant, at some point prior to having provided its June 7, 2019 notice of the Irvine lawsuit to defendant. On that issue, defendant provided the affidavit of Joshua Bell, a senior claims examiner with Markel Service, Inc.,[3] who swore that defendant received no notice of the Irvine lawsuit or request for coverage from Maple Manor until June 7, 2019. Attached to Bell's affidavit is a "First Notice of Loss" indicating that Stella Evangelista called and spoke to Jessica Coyne of Risk Placement Services (the wholesale broker who procured the policy for Maple Manor) on that date to advise of the Irvine lawsuit and requested that defendant contact the insured, Marcus Evangelista, for further details and a copy of the summons. The notice contained a note to "Please expedite as court date is scheduled for June 17th."

On the other hand, one of Maple Manor's principals, Dr. Jose Evangelista, swore in an affidavit that was provided to the trial court:

---

[3] Markel Service, Inc. is the underwriting and claim services manager for defendant.

5. That as part of our policy and procedure when served a lawsuit, that the malpractice insurance company is informed immediately when served of any malpractice lawsuit;

6. That I was made to believe that there was no insurance coverage based on representations made by the insurance company;

7. That we took action and started defending the case as if we had no insurance;

8. That we worked on this case for two years at no expense to the insurance company;

9. That on or around June 2019, we later discovered that we did have insurance coverage;

10. That a request was filed to the insurance company to take over or join our defense team as we were ready to go to trial which was postponed for another 9 months;

*** 

13. That the trial was canceled and mediation was to take place 9 months later, thus the insurance company had every opportunity to represent us [and/or] join our team;

14. That [the] insurance company exposure was limited;

There are several problems with the affidavit. First, it bears no year that it was signed. It was submitted in the trial court in response to defendant's motion for summary disposition on April 27, 2021, but bears only the date "August 11." Second, 13. in the affidavit is inconsistent with the lower court register of actions in the Irvine lawsuit. The register of actions shows that case evaluation took place in that matter on November 12, 2018 and was rejected on December 10, 2018. A docket entry for June 13, 2019 shows "Closed-Case Dismissed, Order to Follow." There was no mediation scheduled to take place after the summary disposition hearing.[4] Giving the declarant the benefit of the doubt, we will assume he meant arbitration.

Third, there are no relevant details or facts in in the affidavit. For example, in paragraph 5., Evangelista swore "That as part of our policy and procedure when served a lawsuit, that the

---

[4] The June 17, 2019 entry in the register of actions shows trial canceled and "Case Disposed/Order Previously Entered." An October 31, 2019 entry shows "Admin Closure-Lack of order Entry, Signed and Filed." The register of actions shows that: a "miscellaneous motion" was filed on December 15, 2021; an "order denying motion" was signed and filed on January 19, 2022; several orders adjourning a settlement conference were entered in April, 2022, and; the final pretrial conference scheduled for September 1, 2022 and trial scheduled for September 12, 2022 were cancelled.

-8-

malpractice insurance company is informed immediately when served of any malpractice lawsuit." Accepting that statement as true, Evangelista did not swear that is what occurred in *this* particular instance, consistent with their general policy and procedure. In paragraph 6, Evangelista swore, "That I was made to believe that there was no insurance coverage based on representations made by the insurance company." Notably, Evangelista did not state if *he* spoke to *defendant*. Thus, accepting paragraph 6 as true, we still do not know if any representations were made by defendant, if any such representations were made specifically to Evangelista, what any representations consisted of, or when any representations were made. The only clarification given to this assertion does not appear in discovery, but only at the September 8, 2020 hearing on defendant's first motion for summary disposition. At that hearing, plaintiff's counsel stated, "If you have an insurance broker saying I'm sorry, there's no coverage for this claim and we're, we're under fire we're gonna defend it." Thus, it appears at best that someone from Maple Manor may have called the insurance broker though which it obtained its insurance policy, Risk Placement Services, Inc—not defendant. Not only is this speculation rather than evidence, "[w]hen an insurance policy "is facilitated by an independent insurance agent or broker, the independent insurance agent or broker is considered an agent of the insured rather than an agent of the insurer." *Genesee Foods Services, Inc v Meadowbrook, Inc*, 279 Mich App 649, 654; 760 NW2d 259 (2008).

Next, Maple Manor specifically requested cancellation of the policy with defendant, through its broker, Risk Placement Services, on May 16, 2018. Risk Placement Services tendered the request to defendant on May 30, 2018. In the request for termination, it was communicated to defendant that Maple Manor wanted to cancel the policy effective January 1, 2018, but as advised that defendant could not do so, since it was already five months into the policy. Defendant could, however, cancel the policy as of May 16, 2018 and refund the unused portion of the premium to Maple Manor, which it apparently did. Thus, contrary to Evangelista's affidavit, Maple Manor knew full well it had active insurance with defendant on July 20, 2017, the date the lawsuit was filed, and thereafter until it requested termination of the policy on May 16, 2018.

Finally, and most importantly, the position that Maple Manor took in the Irvine lawsuit directly contradicts the affidavit, as shown in signed pleadings, and that position undercuts plaintiff's argument with respect to whether it gave notice of the Irvine lawsuit to defendant "as soon as practicable" and whether that phrase is ambiguous under the facts and circumstances of this case. Relevant to the instant matter, in its September 7, 2018 responses to requests for production in the Irvine lawsuit, Maple Manor stated that "[Maple Manor] defend[s] this case out of principle and it has self-insured the claim since this action has no merit and the medical evidence is overwhelming." To specific questions asking about insurance agreements and policies, Maple Manor responded, " . . . [Maple Manor] is self-insuring this claim and thus, there is no insurance coverage because [Maple Manor] strongly believes this case has no merit and it will prevail since the medical evidence is overwhelming." In its September 7, 2018 responses to interrogatories in the Irvine lawsuit, Maple Manor again unequivocally stated the same. In its October 14, 2018 case evaluation summary in the Irvine lawsuit, Maple Manor also stated, "Given the frivolous and unsupported nature of this action, Defendant Maple Manor did not submit this claim to its insurance company."

Clearly, then, Maple Manor made a conscious, deliberate decision not to inform defendant of the Irvine lawsuit until June 7, 2019. It was not by accident, oversight, mistake, inadvertence, or belief that it did not have coverage. By that time, Maple Manor had agreed to arbitrate the

matter with the Irvine's estate and had agreed to an arbitration bottom and top award range. While Maple Manor claims that the agreement to arbitrate was beneficial to defendant by strictly limiting its exposure to liability, defendant disagrees, claiming that the late notice and agreement to arbitrate prejudiced it.

In general, prejudice to the insurer is a material element in determining whether notice is reasonably given and the burden is on the insurer to demonstrate prejudice. *Wendel v Swanberg*, 384 Mich 468, 478; 185 NW2d 348 (1971). However, that principle developed in the context of "occurrence" insurance policies and at least one panel of this Court has determined that there is no basis for applying the prejudice principal to "claims made" policies such as the one at issue here. See *Schubiner v New England Ins Co*, 207 Mich App 330, 331; 523 NW2d 635 (1994). Under the facts of this case, we too see no basis for applying the prejudice principal.

First, we note that the delay in giving notice here was approximately two years. Delays of far less have been found to be prima facie failure to give notice "as soon as practicable." See *Wehner*, 331 Mich at 122 (testimony of insurance company claims manager of delay in receiving notice of accident until 7 months, 8 days after the accident occurred "was sufficient to make a prima facie case that the insurer was prejudiced by the failure of the assured to give notice of the accident as soon as practicable [sic]".). Second, as previously indicated, Maple Manor made a deliberate choice to defend against the Irvine lawsuit on its own until a point when *it* determined it wanted defendant to be involved. This is contrary to the express terms of the insurance contract's requirement of notice of a claim "as soon as practicable" and "immediate" service of summons or other process received by plaintiff, as well as the purpose of notice requirements in insurance contracts in general. Notice provides an insurer to make a timely investigation of the incident at issue in order to evaluate claims and to defend against fraudulent, invalid, or excessive claims. *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 447; 761 NW2d 846 (2008). By participating in the Irvine lawsuit for nearly two years and agreeing to arbitrate with a set low/high arbitration award, Maple Manor took away any flexibility defendant may have had to independently investigate and evaluate the matter, to determine strategic decisions, to participate in the discovery process, to choose counsel—basically everything.[5]

In sum, Maple Manor, a professional rehabilitation facility owned and run by doctor principals, was well aware it had professional business insurance coverage provided by defendant for the Irvine lawsuit initiated against it on July 20, 2017. However, Maple Manor chose not to notify defendant of the lawsuit it deemed frivolous or request defense against it from defendant until nearly two years later, when Maple Manor had already agreed to an arbitration with a minimum liability amount of $10,000. This was not "as soon as practicable" notice or, to use the working definition of that phrase regularly used by our courts, "in a reasonable time." Murphy,

---

[5] Maple Manor now asserts that it recently reinstated the Irvine lawsuit in the trial court such that defendant now has a "clean slate" in which to investigate and defend against action. However, we are a Court of review. We analyze the trial court's decision to grant summary disposition on the basis of the original record that existed at the time the trial court decided the motion, not on the basis of additional materials or assertions. See MCR 7.210(A)(1). Moreover the lack of providing notice of the claim "as soon as practicable" would still defeat plaintiff's claim.

-10-

228 Mich at 296-297; Kennedy, 319 Mich at 494; *Motor State Ins Co*, 35 Mich App 287 at 290. Thus, Maple Manor did not comply with the terms of the insurance contract as it then existed. The trial court did not err in finding that there was no material questions of fact on these issues and that defendant was thus entitled to summary disposition.

## III.  ATTORNEY FEES

We review a trial court's finding that an action is frivolous for clear error.  *Kitchen v Kitchen*, 465 Mich 654, 661; 641 NW2d 245 (2002).  "A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made."  *Id.* at 661-662.  We review the amount of an award of sanctions for an abuse of discretion.  *In re Costs & Attorney Fees*, 250 Mich App 89, 104; 645 NW2d 697 (2002).

In response to defendant's first motion for summary disposition, Maple Manor stated that summary disposition would be premature given that discovery was still open and that it still needed at a minimum, a copy of the insurance claim file, privilege log, and the deposition of the adjuster who denied the claim.  Maple Manor claimed it would suffer substantial prejudice without the item, that "Discovery will reveal that Defendant misrepresented to [Maple Manor] that it had no insurance coverage and Defendant refused to defend the claim," and that "On or around June 2019, Maple Manor re-investigated its insurance coverage and discovered it had insurance coverage and immediately notified Defendant of the lawsuit.  At the hearing on defendant's first motion for summary disposition, the trial court cautioned Maple Manor that if it did not come up with something admissible to support its position during the remining discovery period, it would award defendant its attorney fees and costs from the hearing date going forward.

When discovery was concluded, defendant filed its second motion for summary disposition, which the trial court granted.  In its following motion for costs and attorney fees, defendant argued that it was entitled to *all* costs and attorney fees incurred in defending the lawsuit, because the lawsuit was frivolous from the start.  We agree.

Under Michigan law, a party that maintains a frivolous suit or asserts frivolous defenses is subject to sanctions under applicable court rules and statutes.  MCR 2.625 states:

**(A) Right to Costs.**

(1) *In General.* Costs will be allowed to the prevailing party in an action, unless prohibited by statute or by these rules or unless the court directs otherwise, for reasons stated in writing and filed in the action.

(2) *Frivolous Claims and Defenses.* In an action filed on or after October 1, 1986, if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591.

Under MCL 600.2591:

(1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the

prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

(2) The amount of costs and fees awarded under this section shall include all reasonable costs actually incurred by the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees.

(3) As used in this section:

(a) "Frivolous" means that at least 1 of the following conditions is met:

(*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(*iii*) The party's legal position was devoid of arguable legal merit.

(b) "Prevailing party" means a party who wins on the entire record.

The purpose of imposing sanctions for asserting frivolous claims "is to deter parties and attorneys from filing documents or asserting claims and defenses that have not been sufficiently investigated and researched or that are intended to serve an improper purpose." *BJ's & Sons Const Co, Inc v Van Sickle*, 266 Mich App 400, 404–06; 700 NW2d 432 (2005), quoting *FMB–First Michigan Bank v Bailey*, 232 Mich App 711, 723; 591 NW2d 676 (1998). "In determining whether a claim was frivolous, courts look at the circumstances at the time the claim was asserted." *Fette v Peters Const Co*, 310 Mich App 535, 550; 871 NW2d 877 (2015) (citation omitted).

We are satisfied not only that Maple Manor had no reasonable basis to believe that the facts underlying its legal position in this matter were in fact true, but also that Maple Manor's legal position was devoid of arguable legal merit. There is no question that a as condition precedent for coverage under the insurance policy with defendant, Maple Manor had an obligation to report the Irvine lawsuit to defendant, in writing, as soon as practicable, and immediately forward the legal documents to defendant. Maple Manor does not deny this.

Maple Manor first claimed it tried to provide notice, but was told that it had no coverage. The sole basis for this assertion was an undated (by year) affidavit of Dr. Evangelista, principal of Maple Manor, who swore that he was led to believe that there was no coverage. As previously indicated, the affidavit was directly contradicted by pleadings filed in the Irvine lawsuit in September and October 2018 wherein Maple Manor affirmatively stated it did not submit a claim to defendant and was self-insuring against the claim because the lawsuit was frivolous. The pleadings were signed by the same attorney that signed the complaint and pleadings in the instant action. Under MCR 1.109(E)(5), counsel's signature on the documents in the Irvine lawsuit constitutes a certification that: he read the documents; to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and

is warranted by existing law, and; the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

The affidavit was also contradicted by Maple Manor's counsel who indicated at the hearing on defendant's first motion for summary disposition that the insurance *broker*, not defendant, told someone from Maple Manor there was no coverage. Maple Manor not only produced no evidence that it reported the Irvine lawsuit to defendant prior to 2019, it produced no evidence or substantiation for its claim that it reported the lawsuit to its insurance broker prior to 2019.

Despite the above, and knowing full well of the documents it had signed in the Irvine lawsuit, Maple Manor required defendant to go through a year and half lawsuit in which defendant participated in discovery and was forced to file three motions to compel against Maple Manor. Maple Manor ultimately produced no evidence whatsoever that it notified defendant of the claim "as soon as practicable." It would have taken minimal effort to draft an email or letter to defendant to confirm coverage or lack thereof. How little effort it would have taken is shown by the fact that in May, 2018, Maple Manor contacted its broker and requested that it terminate the policy with defendant "immediately." This was accomplished within two weeks.

Maple Manor then argued that what constitutes "as soon as practicable" is a question of fact for the jury. Notably, Maple Manor never really argued that it's providing of notice to defendant nearly two years after the Irvine lawsuit was filed against it was "as soon as practicable" under any definition. More importantly, basic contract law dictates that an insurance contract is not ambiguous (and thus submitted to a jury for factfinding) merely because a term is not defined in the contract; instead, any terms not defined in the contract should be given their plain and ordinary meaning. *Vushaj*, 284 Mich App at 515. And, as previously indicated, "as soon as practicable" does have a logical meaning that has long been applied by this Court, and that can be applied by the trial court when the facts and inferences of the case are largely undisputed, as they are here — a reasonable time, dependent upon the facts and circumstances of the case. *Kennedy*, 319 Mich at 494. Notice provided nearly two years after a lawsuit is filed, without basis or excuse, when Maple Manor fully participated in the lawsuit and affirmatively stated in the lawsuit that it intentionally did not submit a claim to its insurance company is in no logical realm "as soon as practicable." Maple Manor had all of the above information when he filed the instant lawsuit against defendant and Maple Manor thus had no reasonable basis to believe that the facts underlying its legal position in this matter were in fact true, nor did Maple Manor's legal position have any arguable legal merit. The trial court thus abused its discretion in declining to award defendant all of its attorney fees in this frivolous matter.

We affirm the grant of summary disposition in defendant's favor, reverse the trial court's order awarding only part of defendant's requested attorney fees, and remand for entry of an order awarding defendant all of its requested attorney fees. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto
/s/ Kristina Robinson Garrett

-13-