*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DESIREE DURGA and JUSTIN DURGA,

      Plaintiffs-Appellees,

v

MEMBERSELECT INSURANCE COMPANY,

      Defendant-Appellant.

UNPUBLISHED
August 13, 2025
9:04 AM

No. 371891
Benzie Circuit Court
LC No. 23-012025-CZ

Before: O'BRIEN, P.J., and BOONSTRA and WALLACE, JJ.

PER CURIAM.

This action arises out of a motor vehicle accident that occurred in June 2023, when plaintiff Desiree Durga was driving a Chevrolet Silverado that was involved in a collision with another motor vehicle. This accident resulted in extensive damage to the Silverado, which was insured by defendant MemberSelect Insurance Company (MemberSelect). Plaintiffs alleged that defendant breached their automobile insurance contract when it rescinded their policy based upon an allegation that Desiree Durga made a fraudulent misrepresentation in the application process. The trial court entered a July 2, 2024 amended order granting plaintiffs' motion for summary disposition on their breach of contract claim pursuant to MCR 2.116(C)(10) and denying defendant's cross-motion for summary disposition in which it had argued that it was entitled to rescind the policy. On July 9, 2024, the court entered an order of judgment in favor of plaintiffs in the amount of $82,476.04, and this appeal of right by defendant followed. We affirm.

## I. FACTS

As a result of plaintiff Justin Durga having two or more substance abuse convictions in seven years, his Michigan operator's license was mandatorily revoked from June 9, 2007 "until requirements have been met." MCL 257.303(2)(c).

-1-

In June 2012, plaintiff Justin Durga's wife, Desiree, applied to obtain automobile insurance from defendant MemberSelect for a Jeep Grand Cherokee that she owned.[1]  According to plaintiff Desiree Durga, "[a]t that time I fully disclosed to AAA that my husband, Justin Durga, did not have a valid driver's license."[2]  Defendant's insurance records reflect that plaintiffs have been "AAA Insured" since June 29, 2012.

While defendant MemberSelect claims that Desiree Durga's application for insurance contained a material misrepresentation, it has not produced a copy of her June 2012 application in this case.  In response to a request for production of documents seeking to have defendant "[p]roduce the application for insurance that Plaintiff(s) filed with Defendants for the Policy," defendant responded "This application for insurance no longer exists."

In the lower court, MemberSelect relied upon two documents, a "New Declaration Certificate" (certificate), and an "Automobile Application Addendum and Authorization" (addendum), the latter of which was only signed by AAA sales representative, Jeanine Michalski, at 9:53AM on February 25, 2013.  Under a line item labeled "Driver Type," the certificate states that Desiree Durga is "ASSIGNED"[3] and Justin Durga is "NOT LICENSED"; and under another line item labeled "Years Licensed" it states "7" for Desiree Durga and "0" for Justin Durga.  Contrarily, in the addendum, next to a line asking "Do all drivers have a valid driver's license including drivers 16 years of age with a graduated license?" the box marked "Yes" is checked.  Again, the addendum reflects a signature by Jeanine Michalski on the "Sales Representative" line, but the "Signature of Applicant" line above it is blank.  In her affidavit, Desiree Durga's avers that "I never stated that Justin Durga had a valid driver's license, nor did I ever prepare or sign this Addendum."

The addendum indicates that the Durgas carried automobile insurance with Farmers Insurance Exchange through March 15, 2013, and consistent with the certificate, it appears MemberSelect first insured Desiree Durga's Jeep for the February 25, 2013-August 25, 2013 policy term.  This policy was renewed and continued for ten years through the February 25, 2023-August 25, 2023 term at issue in this litigation.  Desiree Durga's affidavit also avers that "every renewal from AAA or MemberSelect continued to state that Justin Durga was not licensed—as

---

[1] The policy of insurance that was in effect on the date of the accident was issued by defendant MemberSelect.  In various documents prepared by defendant in this matter, including documents sent to plaintiffs, it refers to itself as "MemberSelect Insurance Company," "AAA Insurance," "AAA," and "The Auto Club Group."  By way of example, one of defendant's insurance records says that plaintiffs have been "AAA Insured" since June 29, 2012.

[2] This statement was contained in an affidavit attached to plaintiffs' response to defendant's cross-motion for summary disposition.

[3] I.e., as the assigned driver of the insured Jeep Grand Cherokee.

this has not changed since 2007 or 2012 when I first acquired insurance from AAA and then later, Member Select."[4]

On June 22, 2023, Desiree Durga was driving the 2023 Chevrolet Silverado, which she owned and which was insured by defendant, when it was involved in a collision with another vehicle. While no one suffered serious injury, the new Silverado was a total loss (i.e., it was "totaled") and she submitted a claim for that loss to MemberSelect. She was subsequently contacted by an individual with the AAA Insurance Special Investigations Unit. In a July 12, 2023 recorded telephone interview, that individual inquired whether the subject vehicle was being used in the operation of the Durgas' business (which would result in an exclusion of coverage). Desiree Durga confirmed that none of the vehicles insured under the MemberSelect policy were used for their business (and that the vehicles used for their business were insured through another insurance company). Consistent with her representations in applying for insurance in June 2012, and thereafter, she further confirmed in this interview that her husband Justin Durga does not have a valid driver's license and does not drive any of the vehicles insured by the MemberSelect policy.

Thereafter, the Durgas received a July 21, 2023 letter from MemberSelect stating that their automobile insurance policy was being cancelled as of August 23, 2023 without providing any explanation for that action. The Durgas then received a July 25, 2023 letter from MemberSelect stating that it was rescinding the automobile insurance policy for the February 25, 2023-August 25, 2023 policy term. This letter asserted that, in issuing the subject automobile insurance policy, it relied upon their representation that "Justin Durga is not licensed." It further stated:

> However, our review of this information reveals that the information was false or misleading and material facts were misrepresented. The false or misleading facts include, but are not limited to, the following:
>
> 1. Justin Durga has a revoked driver's license.

The July 25, 2023 letter then indicated it was rescinding coverage and that it was void as of February 25, 2023 by application of several General Conditions contained in the automobile insurance policy and quoted in the letter. The letter further indicated that plaintiffs would receive a refund or credit of premium for this February 25, 2023-August 25, 2023 policy.

## II. PROCEDURAL HISTORY

The Durgas brought this lawsuit on September 5, 2023 alleging that MemberSelect was in breach of their automobile insurance contract for failing to pay their claim arising from the June 22, 2023 collision that totaled Desiree Durga's new Silverado.

Plaintiffs filed a motion for summary disposition pursuant to MCR 2.116(C)(9) (failure to state a valid defense) and (C)(10) (no genuine issue of material fact). Plaintiffs argued

---

[4] Plaintiff suggests that MemberSelect is the successor insurance company to the AAA underwriter to which she applied in 2012, whereas defendants says she applied to MemberSelect. But the issue of whether MemberSelect is a successor is not before this Court.

MemberSelect's stated reason for rescinding the automobile insurance policy, that Desiree Durga falsely represented that her husband Justin Durga did not have a driver's license, itself had no basis in fact. Plaintiffs asserted that Desiree Durga's application disclosed the fact that Justin Durga was not a licensed driver, prior to the policy issuing, that AAA acknowledged that he was not a licensed driver in its certificate, and this information did not prevent it from insuring the Durgas under the policy (i.e, the policy acknowledged that Justin Durga was not a licensed driver). Plaintiffs further asserted that no term in the policy supported its cancellation. Finally, plaintiffs argued that MemberSelect should be liable for plaintiffs' attorney fees for unreasonably denying their claim.

MemberSelect initially filed a response to the motion, but then filed a combination supplemental response and cross-motion for summary disposition pursuant to MCR 2.116(C)(10). MemberSelect contended that Desiree Durga asserted in her application for insurance that both she and her husband have a valid driver's license. However, MemberSelect only relied upon the February 25, 2013 addendum, which stated that the "policy has been underwritten and/or rated based on the following questions we asked you and the indicated responses you provided to us." MemberSelect's responses and cross-motion did not provide Desiree Durga's June 2012 application for insurance to demonstrate that she actually made such representation (again, defendant asserts that "it no longer exists). Although defendant also attached the February 25, 2013 certificate, the responses and cross-motion did not mention that, in conflict with the addendum, that certificate states that Justin Durga is "NOT LICENSED" and that he has "0" "Years Licensed." Instead, in its responses and cross-motion, defendant noted that when "a new policy [with a new policy number] was issued to Plaintiffs effective August 25, 2020" "[d]ue to the Michigan No-Fault Reform," that later policy listed Justin Durga as "not licensed" (i.e., suggesting that this was the first time he was listed this way). In its supplemental response and cross-motion defendant also argued "[i]f Defendant had known that Mr. Durga's license was suspended then under Defendant's underwriting guidelines neither Plaintiff would have been eligible for coverage."

Further, in the responses and cross-motion, defendant argued that, based upon Justin Durga's driver's license having been revoked in 2007, the February 25, 2013 addendum should not have indicated that Justin Durga has a valid driver's license; and again that, if his revoked license status been disclosed, the Durgas would not have been eligible for coverage. Defendant also asserted that it had the option to rescind or void the policy based upon policy language requiring timely notification of changes in application representations, as well as policy language regarding concealment, misrepresentation, or fraud in declarations made in applying for, changing, or renewing coverage.

Finally, defendant claimed that plaintiffs' representation that Justin Durga did not have a license was likewise not true or accurate because he was previously issued a driver's license and driver's license number, which was subsequently revoked. Pursuant to an affidavit by one of defendant's senior underwriters, Sherida Griffith, under MemberSelect's underwriting guidelines, " 'not licensed' is not the same as a driver whose license has been suspended or revoked" and "a driver is only to be considered to be 'not licensed' if the driver has never held a driver's license and does not have a driver's license number." The responses and cross-motion contended that the fraudulent misrepresentations were material because, if the revoked status of Justin's license were

disclosed, it would not have issued the automobile insurance policy, as the Durgas would not have been eligible for coverage according to its underwriting guidelines.

In plaintiffs' response to defendant's cross-motion for summary disposition, they argued that Desiree Durga's original June 2012 application does not exist per defendant's response to plaintiffs' request for production of documents, such that defendant cannot support its argument for summary disposition. They further relied upon the affidavit of the person who applied for the insurance on behalf of herself and her husband, Desiree Durga, which avers that she: fully disclosed to AAA that Justin Durga did not have a valid driver's license at the time of her initial June 2012 application, was never provided with or saw the "underwriting guidelines" that defendant now relies upon, never stated that Justin Durga had a valid driver's license and did not prepare or sign the addendum defendant relies on for this position, and further, that her understanding and opinion is that his license being revoked meant that he did not have a valid driver's license. Plaintiffs noted that defendant's cross-motion only relied upon the addendum's indication that Justin Durga has a valid driver's license, ignoring the contradictory statements in the certificate it simultaneously prepared that he is "NOT LICENSED" and had "0" years licensed, and that neither of these documents were created or signed by plaintiffs. Plaintiffs further argued that defendant has not and cannot demonstrate the six elements of fraudulent misrepresentation in Desiree Durga's application for insurance to a reasonable degree of certainty so as to entitle it to rescission, where there is no application to refer to, no misrepresentation was made, and defendant's argument relies upon underwriting guidelines that were not known or available to plaintiffs.

At the hearing on the parties' motions, defendant confirmed that the original 2012 application for insurance at issue had been lost. The trial court ruled that defendant, in asserting that it was entitled to rescission of the policy based upon fraudulent misrepresentation in the application, stated a valid defense to plaintiffs' breach of contract claim, and so it denied plaintiff's motion for summary disposition pursuant to MCR 2.116(C)(9). However, it granted summary disposition pursuant to MCR 2.116(C)(10) because: (1) "defendant doesn't possess or can't retrieve the actual application for insurance" on which their allegations of fraudulent misrepresentation are based, and further, (2) defendant is relying upon the affidavit of an underwriter asserting that MemberSelect's underwriting guidelines make material distinctions between a person being "unlicensed" or "not licensed" versus their license being revoked when it is acknowledged that plaintiffs never had access to these guidelines. The trial court also noted defendant's reliance on *Farmers Ins Exch v Anderson*, 206 Mich App 214, 216; 520 NW2d 686 (1994),[5] wherein this Court referred to a driver whose license had been revoked as being "unlicensed," such that the trial court disagreed that representing that Justin Durga is "not licensed" when his license is revoked constitutes a false representation. The trial court accordingly found

---

[5] Overruled in part on other grounds by *Titan Ins Co v Hyten*, 491 Mich 547, 551 n 1; 817 NW2d 562 (2012).

no genuine issue of material fact as to plaintiff's breach of contract claim and that defendant failed to establish grounds for rescission.[6]

Following entry of a July 2, 2024 amended order granting plaintiffs' and denying defendant's motions for summary disposition, the trial court entered an order of judgment on July 9, 2024 in plaintiffs' favor in the amount of $82,476.04, representing the damages incurred by plaintiffs related to their vehicle.[7]

## III. STANDARD OF REVIEW

"This Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

> A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (internal quotation marks and citations omitted).]

In reviewing a (C)(10) motion, a court must examine the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties and, drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists. MCR 2.116(G)(5); *Maiden*, 461 Mich at 120; *Downey v Charlevoix Co Bd of Road Comm'rs*, 227 Mich App 621, 626; 576 NW2d 712 (1998).

A genuine issue of fact exists when reasonable minds could differ as to the conclusions to be drawn from the evidence. *West v Gen'l Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). A court is not permitted to assess credibility, to weigh the evidence, or to determine the facts, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 437; 695 NW2d 84 (2005). "Circumstantial evidence can be evaluated and utilized in regard to

---

[6] The trial court further awarded plaintiffs attorney fees pursuant to MCR 500.3148. This ruling is not challenged by MemberSelect on appeal.

[7] This order of judgment states that it "is not a final order and does not close the case." However, it appears from its substance that the order nonetheless qualifies as a final order under MCR 7.202(6)(a)(i), being "the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties, including such an order entered after reversal of an earlier final judgment or order." Further, a review the record reveals that the only matter outstanding in the trial court is an award of attorney fees, which postjudgment order would constitute a separate final order from which a separate claim of appeal could be filed. MCL 7.202(6)(a)(iv).

determining whether a genuine issue of material fact exists for purposes of summary disposition." *Bergen v Baker*, 264 Mich App 376, 387; 691 NW2d 770, 777 (2004).

The proper interpretation of a contract is a question of law that this Court reviews de novo. *Titan Ins Co v Hyten*, 491 Mich 547, 553; 817 NW2d 562 (2012).

## IV. LAW AND ANALYSIS

### A. INSURANCE POLICIES AS CONTRACTS; INTERPRETATION

"Insurance policies are contracts and, in the absence of an applicable statute, are 'subject to the same contract construction principles that apply to any other species of contract.'" *Id*. at 554, quoting *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005).

"An insurance policy must be enforced in accordance with its terms, which are given their 'commonly used meaning' if not defined in the policy." *Allstate Ins Co v McCarn*, 471 Mich 283, 288; 683 NW2d 656 (2004), citing *Frankenmuth Mut'l Ins Co v Masters*, 460 Mich 105, 112, 114; 595 NW2d 832 (1999). It is appropriate to consult lay dictionaries for this purpose. *Citizens Ins Co v Pro-Seal Serv Group, Inc*, 477 Mich 75, 84; 730 NW2d 682 (2007). Further, when a colloquial or idiomatic phrase is in dispute, "the proper approach is to read the phrase as a whole, giving the phrase its commonly used meaning." *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 355-356; 596 NW2d 190 (1999), citing *Group Ins Co of Mich v Czopek*, 440 Mich 590, 596; 489 NW2d 444 (1992). "[T]he court must not mechanistically parse the meaning of each word in the phrase; instead, it must look to the contextual understanding and consider the phrase as a whole." *Id*. at 357.

> It is axiomatic that if a word or phrase is unambiguous and no reasonable person could differ with respect to application of the term or phrase to undisputed material facts, then the court should grant summary disposition to the proper party pursuant to MCR 2.116(C)(10). Conversely, if reasonable minds could disagree about the conclusions to be drawn from the facts, a question for the factfinder exists. [*Id*. at 353 (internal citation omitted).]

Ambiguities in contract language are construed against the drafter in favor of coverage. *Heniser v Frankenmuth Mut'l Ins Co*, 449 Mich 155, 160; 534 NW2d 502 (1995); *McKusick v Travelers Indemnity Co*, 246 Mich App 329, 333; 632 NW2d 525 (2001). Policy language is ambiguous when "its words can be reasonably understood in different ways." *Michigan Twp Participating Plan v Pavolich*, 232 Mich App 378, 382; 591 NW2d 325 (1998), citing *Raska v Farm Bureau Mut Ins Co of Michigan*, 412 Mich 355, 361-362; 314 NW2d 440 (1982).

### B. SEEKING POLICY RESCISSION BASED UPON ALLEGED FRAUD IN THE APPLICATION OR PROCUREMENT PROCESS

MemberSelect asserts the common law defense of fraudulent misrepresentation in plaintiff's application for or procurement of the subject automobile insurance policy and seeks rescission of the policy *ab initio* in order to avoid its contractual obligations to pay on plaintiffs' claim.

"Generally, '[f]raud in the inducement to enter a contract renders the contract *voidable* at the option of the defrauded party . . . .' " *Bazzi v Sentinel Ins Co*, 502 Mich 390, 408; 919 NW2d 20 (2018) (emphasis added), quoting 5A Michigan Civil Jurisprudence, Contracts, § 44, p 215. "[A]n insurance policy procured by fraud may be declared void *ab initio* at the option of the insurer," such that "[i]n effect, the insurance policy is considered never to have existed." *Id.*

"Because a claim to rescind a transaction is equitable in nature, it 'is not strictly a matter of right' but is granted only in 'the sound discretion of the court.' " *Id.* at 409, quoting *Amster v Stratton*, 259 Mich 683, 686; 244 NW 201 (1932). "[R]escission should not be granted in cases where the result thus obtained would be unjust or inequitable." *Bazzi*, 502 Mich at 410, quoting *Amster*, 259 Mich at 686.

The party asserting entitlement to the defense of fraudulent misrepresentation bears the burden of proving six elements to a reasonable degree of certainty:

> (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. [*Hyten*, 491 Mich at 555 (citation omitted), see also 571-572.]

Fraud "is not to be lightly presumed, but must be clearly proved . . . by clear, satisfactory and convincing evidence." *Cooper v Auto Club Ins Ass'n*, 481 Mich 399, 414; 751 NW2d 443 (2008) (internal quotation marks and citations omitted).

## C.  NO EVIDENCE OF A FALSE, MATERIAL MISREPRESENTATION

On appeal, defendant contends that advising defendant that Justin Durga was "not licensed," "unlicensed," that he has "0" years licensed, or that he did not have a license, were all false, material representations.[8]  We disagree.

### 1.  "NOT LICENSED" OR "UNLICENSED"

Defendant contends "not licensed" means that a person has never been licensed, whereas Justin Durga was licensed because he had been issued a driver's license and driver's license number, but his license was thereafter revoked.  Defendant contends, by way of the affidavit of one of its senior underwriters, Sherida Griffith, that under MemberSelect's underwriting guidelines, " 'not licensed' is not the same as a driver whose license has been suspended or revoked" and "a driver is only to be considered to be 'not licensed' if the driver has never held a driver's license and does not have a driver's license number."  However, defendant acknowledged that those underwriting guidelines were not made available to the plaintiffs.  Further, defendant does not otherwise contend that "not licensed" or "unlicensed" are terms defined by its application

---

[8] On appeal, defendant has abandoned any argument pertaining to the addendum signed only by the AAA sales representative.

or automobile insurance policy, which means they are given their commonly used meaning, and ambiguities are construed against the drafter in favor of coverage. *McCarn*, 471 Mich at 288; *Heniser*, 449 Mich at 160. We accordingly turn to the lay dictionary definition of "not licensed" or "unlicensed" to determine their commonly used meaning. *Pro-Seal*, 477 Mich at 84.

*Merriam-Webster's Collegiate Dictionary* (11th ed) defines "license" as "permission to act," or "a permission granted by competent authority to engage in a business or occupation or in an activity otherwise unlawful." Further, the prefix "un-" means "not" and the suffix "-ed" means "having." Additionally, "not" is "used as a function word to make negative a group of words or word." Accordingly, "unlicensed" and "not licensed" are identically defined as not having permission to act or not having a permission granted by a competent authority to engage in an activity. Similarly, the *Merriam-Webster.com Dictionary* provides the following pertinent definition of "unlicensed": "not licensed: such as . . . not authorized or permitted by a license."[9] Defendant for its part, cites the *Cambridge Learner's Dictionary & Thesaurus* for its definition of "unlicensed": "not having a license." By their plain terms, we do not find that any of these dictionaries' definitions foreclose a person whose license has been revoked from being considered "unlicensed" or "not licensed." Again, any perceived ambiguity in language is construed against the drafter in favor of coverage. *Heniser*, 449 Mich at 160.

Additionally, referring to a person whose license has been revoked as "unlicensed" or "not licensed" is consistent with Michigan law. MCL 257.321 provides that, upon Justin Durga's license being revoked in 2007, the Michigan department of state "shall require that the license be surrendered to and be destroyed by the department." Upon this occurring, one can reasonably conclude that he no longer had a license, and was "unlicensed" or "not licensed." Further, MCL 257.52(2) provides that "[i]f a license has been revoked, an application for a new license may be presented and acted upon by the secretary of state . . . ." In other words, a person whose driver's license has been revoked must go through the process of being issued a new license, i.e., a license different from the one that had to be surrendered to and destroyed by the department of state (and Justin Durga has not done so at any time relevant to this litigation).

Further, as the trial court noted at the summary disposition hearing, defendant itself relied upon *Farmers Ins Exch*, in its summary disposition briefing wherein this Court referred to a driver whose license had been revoked as being "unlicensed." Additionally, defendant likewise relied upon *Ahmed v Tokio Marine America Ins Co*, 337 Mich App 1, 5, 27-28; 972 NW2d 860 (2021), which likewise refers to the plaintiff whose license had been revoked several years earlier as "unlicensed" and "not licensed" for purposes of denying him personal protection insurance benefits pursuant to MCR 500.3113(a). These consistent case references to a person whose license has been revoked being "unlicensed" and "not licensed" reflect the "commonly used meaning" of "unlicensed" and the common understanding and meaning of the colloquial phrase "not licensed." *McCarn*, 471 Mich at 288; *Henderson*, 460 Mich 355-357.

With regard to the underwriting guidelines, we note that they are irrelevant to any issue in this case because they were never provided to plaintiffs and because defendant has failed to

---

[9] *Merriam-Webster.com Dictionary,* <https://www.merriam-webster.com/dictionary/unlicensed> (accessed July 1, 2025).

produce evidence of the first four elements of fraudulent misrepresentation under *Hyten*. If the guidelines had been provided to plaintiffs, then defendant could argue they should have known about the guideline's alleged definition of "not insured." But plaintiffs had no way of knowing about that alleged definition because they were never provided with them. If defendant could establish the first four elements of fraud from *Hyten*, 491 Mich at 555 (a material misrepresentation, falsity of the representation, knowledge of falsity, and intention that it would be acted upon), then the guidelines might be relevant to whether defendant acted in reliance upon the misrepresentation and suffered injury. However, defendant cannot establish any of those elements in this case.

With regard to the certificate, [10] defendant's argument is that we should interpret the phrase "not licensed" to actually mean "never licensed," despite the fact that those two phrases obviously have distinct meanings. But we decline to do so; instead, we interpret the phrase using its "commonly used meaning," as described above. *McCarn*, 471 Mich at 288.

## 2. "0" YEARS LICENSED

On appeal, defendant contends that plaintiff Desiree Durga represented that her husband had "0" years licensed in her June 2012 application in light of his license having been revoked in 2007. However, defendant never sought summary disposition on its affirmative defense of fraud in the application and for rescission of the policy on this ground. And, because the argument was not raised in the trial court, it is unpreserved on appeal and therefore waived. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 300-301; 14 NW3d 472 (2023).

We nonetheless find that this does not constitute a false representation for purposes of establishing that prima facie element of a claim for fraud in the application and rescission. A person responding to this question in the context of applying for an automobile insurance policy would understand it to be inquiring after their current license status, such that a person with a revoked license would answer "0" and a person with a license would answer by providing the number of consecutive years they have held that license. We find defendant's contention, that responding "0" is the functional equivalent of indicating one has never been licensed to be without merit. Responding with a number of years based upon having been licensed during some past time period, while likewise indicating that they are not licensed due to revocation, would appear be factually conflicting and inconsistent. If, as defendant argues, a person with a revoked licensed should nonetheless respond they are licensed (in that they have had a driver's license issued to them, but that it has been revoked), then defendant's argument that for "years licensed" such person should indicate the number of years between the first issuance and the date of the revocation, is inaccurate because, if they are nonetheless licensed (albeit with a revoked license), they should likewise count the years of revocation. At best, the question is ambiguous, such that it is construed against the drafter in favor of coverage, and this representation does not constitute

---

[10] In its reply brief, defendant argues that "[t]he inability to produce the original application is of no moment" because "[p]er condition 17 of the policy, the Durgas adopted the statements on the declaration certificate as their own."

a false representation for purposes of establishing that prima facie element of a fraud in the application rescission claim. *Heniser*, 449 Mich at 160.

In light of all the foregoing, with regard to defendant's affirmative defense of fraudulent misrepresentation, defendant has failed to prove to a reasonable degree of certainty any of the six elements required under *Hyten*, 491 Mich at 555.

### D. DEFENDANT IS NOT ENTITLED TO RESCISSION

Finally, defendant argues that the trial court abused its discretion by failing to uphold defendant's rescission of the policy because "Michigan courts treat rescission more as a matter of entitlement than a matter of discretion where, as here, the claim doesn't involve an innocent third party and rescission doesn't depend on equitable balancing." In support of that assertion, defendant cites to *Webb v Progressive Marathon Ins Co*, 335 Mich App 503, 510; 967 NW2d 841 (2021), and *Lash v Allstate Ins Co*, 210 Mich App 98, 103; 532 NW2d 869 (1995). Defendant essentially asserts that, while an insurance company is entitled to rescission in cases of fraud in the inducement, it is likewise *entitled* to rescission in any other case as long as it does not involve an innocent third party. That is simply not the law in Michigan, and neither of the two cases upon which defendant relies supports that assertion.

In *Webb*, a prospective insured, Chirece Clark, called Progressive to solicit quotes for automobile insurance coverage and provided information, including the fact that her son lived with her and would be the primary driver of the vehicle. She was then emailed a quote, but did not purchase insurance at that time. *Webb*, 335 Mich App at 506. One week later, Clark called Progressive again, did not mention that her son lived with her or would be driving the vehicle, the insurance policy issued, and her son was thereafter involved in an accident. *Id*. This Court held that the record evidence was clear that Clark committed fraud in the procurement of the insurance policy (and we also held that a material question of fact remained as to whether her son participated in the fraud). *Webb*, 335 Mich at 509-512.

In *Lash*, the plaintiff met with an agent for Allstate and applied for motorcycle insurance, claiming that he had no traffic citations within the last three years, and then paid the premium. *Lash*, 210 Mich App at 100. Two days later, the agent called to tell the plaintiff that he had an impaired driving citation within that time frame. *Id*. The plaintiff claimed to have mistakenly believed that the impaired driving citation had occurred more than three years earlier, but signed a document voiding the policy when told he was not eligible for insurance through Allstate. *Id*. Ten days later, he was involved in an accident and subsequently sued Allstate. This Court ultimately found that the insurance policy had been properly cancelled, but also noted that it had been properly rescinded because the defendant made a material (albeit innocent) misrepresentation about the impaired driving citation, because Allstate relied on it. *Lash*, 210 Mich App at 103.

Thus, both *Webb* and *Lash* involved people procuring insurance by making a clear material misrepresentation to the insurance company, thereby entitling those respective insurance carriers to rescind the subject policies of insurance. As previously discussed, not only has defendant not provided clear and convincing evidence of fraud in this case, defendant has provided no evidence of fraud, meaning it is not entitled to rescission. Thus, neither *Webb* nor *Lash* supports defendant's argument in this matter.

## V. CONCLUSION

We affirm the trial court's July 2, 2024 amended order granting plaintiffs' motion for summary disposition pursuant to MCR 2.116(C)(10) and denying defendant's cross-motion for summary disposition.

/s/ Colleen A. O'Brien
/s/ Mark T. Boonstra
/s/ Randy J. Wallace